Clovis Carl GREEN, Jr., Petitioner,

v.

Donald W. WYRICK, Warden, Missouri State Penitentiary, Respondent.

No. 76 CV 147–C.

United States District Court,
W. D. Missouri, C. D.

Nov. 10, 1976.

Clovis Carl Green, Jr., pro se.

Philip M. Koppe, William F. Arnet, Asst. Attys. Gen., State of Missouri, Jefferson, Mo., for respondent.

### ORDER

ELMO B. HUNTER, District Judge.

Petitioner, a state convict confined in the Missouri State Penitentiary, originally filed this action as a petition for writ of habeas corpus challenging conditions of his confinement. Leave to proceed in *forma pauperis* was granted by Order entered August 6, 1976, and following the filing of respondent's response and petitioner's traverse,[1] this cause was set for full evidentiary hearing to commence on Tuesday, October 19, 1976.

On October 15, 1976, respondent filed a Motion for Permanent Injunction pursuant to 28 U.S.C. § 1651, seeking to perpetually restrain and enjoin petitioner from filing or instituting in this or any other court, on his own behalf or on behalf of any other inmate of the Missouri penal system, any action against the State of Missouri or any of its officials or employees, including the state judiciary, for any alleged cause of action arising out of his criminal conviction or his resultant confinement incident thereto, and further to restrain and enjoin petitioner from assisting, aiding or representing any inmates of the Missouri penal system in the preparation of any legal documents whatsoever. Because respondent's Motion for Permanent Injunction raised an issue separable from those raised in the petition for writ of habeas corpus, and because each was a matter of substantial complexity and great importance, warranting clear presentation and careful consideration, the Court on its own motion ordered a separate trial on the issues raised in respondent's Motion for Permanent Injunction, to commence on Monday, October 18, 1976, separately from the hearing of the merits of the other issues in this case, previously set to commence on October 19, 1976.

1. By Order entered September 15, 1976, petitioner's traverse was stricken from the record in this case, for the reason that it contained vile, scandalous and irrelevant material.

The evidentiary hearing on respondent's Motion for Permanent Injunction was held in Jefferson City, Missouri, October 18–20, 1976. Upon calling of the remaining portion of the case, previously set to be heard on October 19, 1976, it was apparent to the Court that petitioner was not prepared to proceed with the trial of the action.[2] Accordingly, a continuance of that portion of the case was granted. Thereafter, upon consideration of the evidence adduced in the hearing on respondent's Motion for Permanent Injunction, the Court entered its Order of November 1, 1976, withdrawing leave to proceed in *forma pauperis* and dismissing that portion of this action involving petitioner's claims, on the ground that petitioner is not a "pauper" within the meaning of 28 U.S.C. § 1915, and that in representing himself to be a pauper, petitioner intentionally engaged in a fraud upon this Court. Subsequently, by Order entered November 3, 1976, the Court ordered separate entry of judgment, pursuant to Rule 54, Federal Rules of Civil Procedure, with respect to the withdrawal of leave to proceed in *forma pauperis* and dismissal of petitioner's claims.

This cause now pends for determination of respondent's Motion for Permanent Injunction. Before discussing at length the merits of this issue, however, it is necessary to address petitioner's objection to the hearing on respondent's Motion for Permanent Injunction. Specifically, petitioner contends that he had inadequate notice of the October 18, 1976, hearing and thus was unable to prepare his case in opposition to respondent's motion.

■ The Court finds petitioner's objection to be without merit. Rule 6(d) of the Federal Rules of Civil Procedure, on which petitioner's objection was based, provides that a motion and notice of hearing "shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by

order of court." Respondent's motion, bearing certificate of service to petitioner on October 15, 1976, was filed on that date. By Order entered that same day, the Court on its own motion ordered a separate hearing on the Motion for Permanent Injunction and set the time for that hearing on October 18, 1976. Thus, the provision of Rule 6(d) for a notice period fixed "by order of court" was followed in this case.

■ Moreover, as the case authority on this subject clearly illustrates, Rule 6(d) is not a hard and fast rule. If the party had actual notice of the hearing and time to prepare to meet questions raised by the motion, the cases hold that Rule 6(d) should not be applied. *Herron v. Herron*, 255 F.2d 589 (5th Cir. 1958); see *Anderson v. Brady*, 5 F.R.D. 85 (E.D.Ky.1945). Petitioner was notified of respondent's motion of Friday, October 15, 1976, in anticipation of an October 19, 1976, hearing date. Even assuming the truth of petitioner's assertion that only on the morning of October 18, did he receive notice of the Court's Order setting a separate hearing on respondent's motion to commence on October 18, 1976, petitioner was aware much earlier of the need to meet that issue at the October 19, 1976, hearing. Indeed, petitioner had been aware of the presence of the injunction issue in this case since August 25, 1976, when respondent's Response to Order to Show Cause asserted that petitioner should be required to show cause why he should not be enjoined from filing this action. In fact, petitioner's traverse, filed September 10, 1976, addressed that very issue. Petitioner's preparation to meet that issue in the October 18, 1976, hearing is further illustrated by the fact that on the morning of October 18 he submitted to the Court a three-page "Petition for Habeas Corpus to Suppress the Motion for Permanent Injunction," and provided the Court the list of witnesses he intended to call during the hearing. In addition, during the course of the hearing, petitioner submitted his eight-page, typewritten "Mo-

**2.** Petitioner attempted orally to expand the scope of his pleadings in this case, and requested that the Court subpoena approximately 38 previously unlisted witnesses. Moreover, petitioner stated that he needed additional time to interview his prospective witnesses and to ascertain the identities of an additional 5 persons whom he desired to call as witnesses.

tion to Dismiss the Respondent's Motion for Permanent Injunction," dated October 18, 1976, containing six separate legal arguments supported by numerous case citations and lengthy discussion of case authority. Under these circumstances Rule 6(d) presented no bar to the October 18, 1976, hearing on respondent's Motion for Permanent Injunction and petitioner clearly was not prejudiced by the absence of a five-day period.[3]

Turning to the merits of respondent's Motion for Permanent Injunction, the Court has reached the following determination. On the basis of the record before the Court, including the files and pleadings of both parties relating to this issue and the testimony and evidence introduced at the hearing on this motion, respondent's Motion for Permanent Injunction pursuant to 28 U.S.C. § 1651 will be granted with respect to actions which petitioner in the future may file on behalf of any other inmate of the Missouri penal system and in which in the future petitioner may assist, aid, or represent any inmate of the Missouri penal system in the preparation of any legal documents whatsoever.

Petitioner has clearly abused the judicial process. By Order entered August 9, 1976, in the case of *Green v. Garrott,* No. 76 CV 135–C, 71 F.R.D. 680 (W.D.Mo.1976), aff'd Misc. No. 76–8184 (8th Cir. Nov. 2, 1976),

this Court pointed out that petitioner "indeed does have a continuing history of engaging in a gross abuse of the judicial process which is impeding the ability of the Judiciary to carry out its proper functions." In support of that observation, the Court noted that as of that date, petitioner had filed . . . on his own behalf a total of 219 civil cases, in the trial and appellate courts in a comparatively brief period of time and is continuing to file such cases at an accelerated rate. . . ." Now taking judicial notice of its own docket, the Court observes that since the filing of the above Opinion and Order in *Green v. Garrott,* Mo., 71 F.R.D. 680, 1976, petitioner has filed an additional seven cases in his own behalf.

This Court has not been alone in noting petitioner's litigious history. In affirming this Court's Order in the case of *Green v. Wyrick,* Misc. No. 76–8096 (8th Cir., June 3, 1976), the United States Court of Appeals for the Eighth Circuit stated, "[T]here is strong reason to believe that petitioner may be seriously abusing his right to access to the courts for redress of grievances . . . ." The statement of Judge Lay, Circuit Judge, in the affirmance of this Court's opinion in *Green v. Garrott, supra,* emphasizes further the conclusion that petitioner has stretched the judicial process to its limits.[4] Other federal judges have come

---

**3.** Petitioner's contention that he was unable to prepare for the hearing because he spent the three days prior thereto under the influence of medication for a nervous condition similarly lacks merit. First, any medication which petitioner ingested was taken on a purely voluntary basis and not as a medical necessity. Secondly the Court notes petitioner's contradictory testimony as to the amount of time which he slept as a result of the medication. Finally, the Court observes that petitioner's "medicated" condition did not prevent him from preparing, during the three days prior to the hearing, both his "Petition for Habeas Corpus to Suppress the Motion for Permanent Injunction" and a two-page letter to the Court, dated October 17, 1976, which the Court received October 19.

**4.** . . . . "Through gross abuse of the legal process, Green's situation runs parallel with the epic story of the boy who yelled 'wolf' too many times—when he actually needed help no-

body would believe him. It may be that within the multitude of the claims Mr. Green has filed, he has somewhere alleged a legitimate grievance. Notwithstanding the meticulous efforts of busy federal district and appellate judges to find a real grievance, one may nonetheless have been overlooked. Mr. Green has only himself to blame for this. In addition, primarily due to abusive writ writing by prisoners such as Green, the Supreme Court unfortunately, in my opinion, has begun to place substantive and procedural restrictions on prisoners' rights previously recognized under the Great Writ. Cf. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). One cannot blame prisoners for attempting to find legal loop holes to avoid imprisonment; however, at the same time, it is common sense that conscientious recognition of prisoner rights can continue only as long as the process is not abused by the prisoners to the extent that renders it meaningless. We are coming dangerously

independently to the same conclusion. In a memorandum filed July 19, 1976, in *Green v. United States of America, et al.,* No. 76 CV–100–C, the Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, observed that petitioner is "a profligate writ writer and jail house lawyer" who repeatedly has "chosen to obstruct other good faith litigants from access to the court by his continual filing of frivolous lawsuits. . ." Judge Wangelin also noted that "The obvious intent of the plaintiff's complaint is to harass the Court, as evidenced by his numerous filings." By memorandum filed August 25, 1976, in that same case, Judge Wangelin observed: "As of this date, the petitioner, Clovis Carl Green, Jr., has filed in excess of two hundred lawsuits. *Green v. Garrott,* 71 F.R.D. 680 (W.D.Mo.1976). All of these lawsuits have been frivolous and there is no indication that the petitioner will ever cease his litigious activities unless he is enjoined." Accordingly, Judge Wangelin entered his Order forever enjoining Clovis Carl Green, Jr., from filing any further lawsuits concerning the administration and operation of the United States District Court for the Western District of Missouri. *Green v. United States of America, et al.,* No. 76 CV–100–C (E.D.Mo. August 25, 1976). Similarly, in the consolidated cases of *Green v. State of Missouri, et al.,* No. 76 CV 101–C and *Green v. Haynes, et al.,* No. CV 102–C, the Honorable Dennis J. Stewart, United States Magistrate, to whom the cases had been assigned for review and recommendation pursuant to § B.1.b.(5) of Local Rule 26, stated that petitioner's repeated "filing of impertinent allegations constitutes an imminent threat to the administration of justice in this district, when judicial time and effort must be taken to evaluate them."

In addition to the hundreds of lawsuits which petitioner has filed on his own behalf, petitioner's own testimony at the evidentiary hearing held in this cause on October 18, 1976, revealed that he regularly assists other inmates with the filing of lawsuits and grievances. In fact, petitioner claims to have filed "hundreds" of lawsuits for other inmates. In view of the record of petitioner's abuse of the judicial process which continues to this date without slackening, and the fact that for many reasons, detailed below, petitioner is not well-suited to assist other inmates with preparation of legal documents, the Court finds it necessary to enjoin petitioner from serving as a "jailhouse lawyer" from this date forward.

First, despite the experience of having filed "hundreds" of lawsuits, petitioner consistently and deliberately has failed to follow the proper procedures and rules for filing actions in this Court. Contrary to the local rules requiring inmates to submit petitions on court-approved and court-provided forms, and Rule 8(a), Federal Rules of Civil Procedure, requiring a short and plain statement of the claim, petitioner continues to submit voluminous *pro se* pleadings containing conclusory statements and long-winded recitations of irrelevant facts and allegations.[5] Petitioner repeatedly and intentionally has failed to abide with the Order of the Court in presenting his claims on the proper forms, and in providing the Court with the original and two copies of each complaint. See *Green v. Garrott, supra; Green v. State of Missouri, et al.,* No. 76 CV 102–C (W.D.Mo.1976), aff'd Misc. No. 76–8189 (8th Cir., November 2, 1976). Petitioner's habit of sending *ex parte* motions and letters to the Court without serving opposing counsel with a copy caused the Court, in the case at bar, to direct by Order entered September 27, 1976, that the Clerk of the Court in the future shall not file petitioner's motions or suggestions without assurance of service on opposing counsel. Petitioner's pleadings frequently contain offensive, impertinent, and irrelevant com-

close to that time." Misc. No. 76–8184 (8th Cir., Nov. 2, 1976).

5. In *Green v. White,* No. N 76–22–C, for example, petitioner filed a 136-paragraph complaint under 42 U.S.C. § 1983. On July 26, 1976,

Judge Wangelin dismissed that lawsuit as frivolous, noting that petitioner's allegations were "merely another repetition of the frivolous diatribes of the plaintiff."

ments, the nature of which twice have caused the Court to strike petitioner's pleadings as "vile and scandalous."[6] Petitioner regularly ignores, refuses to answer, or marks "irrelevant" in response to questions on court-provided forms concerning his financial status or previous history of litigation. Moreover, in addition to the frivolous nature of the countless actions he files, petitioner frequently repeats allegations in several lawsuits and requests relief in separate suits based upon the same alleged conduct of the defendants.[7]

Further justification for preventing petitioner from engaging in "writ writing" is the fact that petitioner has made a business of rendering legal assistance by charging other inmates for services rendered. During the brief period in which petitioner served as the official "inmate lawyer" for the Administrative Segregation Unit of the penitentiary, and received a salary of $10.00 per month for his services, petitioner was under direct orders from Lt. Wm. Green, Superintendent of that unit, that he was not allowed to charge for his services; Lt. Green testified that after once warning petitioner that he would be "fired" from his position if he continued to charge for his services, Lt. Green did then "fire" petitioner when petitioner's continued charging came to his attention. Prison policy forbids any inmate paid by the institution to perform a function from charging other inmates for performance of those services.

Warden Wyrick testified that to his knowledge, petitioner is the only "inmate lawyer" who charges for his legal services.

Petitioner admits that he did regularly charge other inmates in connection with legal work he performed, but contends that he charged only for purposes of purchasing necessary supplies and that he never refused his services to inmates who couldn't pay for them. This contention is overwhelmingly refuted by the evidence. First, Warden Wyrick and Lt. Green each testified that such supplies as paper, pencils, envelopes, and typewriters are furnished to inmates for the purpose of filing actions in state and federal courts. Secondly, the amounts charged by petitioner far exceed any amount reasonably necessary for the purchase of supplies. In addition, evidence of petitioner's charging specifically for his legal services abounds.

Lt. Green stated that petitioner had admitted to him the fact that he had been charging for his services, and that petitioner had related to Lt. Green the fact that he refused to do legal work for two particular inmates who had not paid him for previous services unless they agreed to pay more in the future. Inmate Raymond Cole testified that, voluntarily and on his own initiative, he circulated a petition, signed by nine inmates of the penitentiary's Administrative Segregation Unit, complaining to the Warden of petitioner's habit of charging for legal work.[8] Four inmates who signed that peti-

---

**6.** By Order entered September 15, 1976, the Court struck petitioner's traverse in the case at bar. See also *Green v. Wyrick,* No. 75 CV 498 W-4 (W.D.Mo.1976). In addition, as the result of statements made by petitioner in connection with the consolidated cases of *Green v. State of Missouri, et al.,* No. 76 CV 101–C and *Green v. Haynes, et al.,* No. 76 CV 102–C, the United States Magistrate has recommended that contempt of court proceedings be instituted against petitioner. In so recommending, Judge Stewart observed that petitioner's "long campaign of vilifications and calumnies against public officials has been unceasing."

**7.** Petitioner states in the petition filed in this case, for example, that the allegations raised in paragraphs Nos. 5 and 8 were "involved in other civil rights cases" filed in this Court. Compare also the allegations made in the con-

solidated cases, Civil Action No. 76 CV 173–C, No. 76 CV 180–C, and No. 76 CV 186–C. Also compare the allegations raised in No. 76 CV 206–C, concerning petitioner's appearance before the Adjustment Board, with similar allegations in the case at bar. See also the petition in No. 76 CV 99–C in connection with No. 75 CV 165–C, and compare No. 76 CV 122–C with No. 75 CV 186–C.

**8.** That petition, identified and entered in evidence as Respondent's Exhibit 21, reads as follows: "We the undersigned wish to make a complaint on the legal services in Adm. Seg. The complaint is that one of the inmate lawyers, Clovis Carl Green #W–27914, has refused to type for us or do any legal work for us with out us paying him. The only way we could get inmate Green to do any legal work for us was to pay him for doing so. We wish

tion testified that they did so voluntarily and recounted instances of petitioner's charging for his services and refusing to render services without payment in cash or "barter" items such as cigarettes and postage stamps.[9]

Further, the evidence discloses that rather than faithfully asserting the claims of those inmates whom he has assisted as "writ writer" and truly representing their interests in the lawsuits he filed in their behalves, petitioner has used his writ-writing as a vehicle for pressing his own ideas and grievances. For example, inmate Raymond Cole testified that petitioner drafted for him a petition to obtain return of lost merit time which Cole did not file because he considered it merely "harassment" of the prison officials and not the simple request for relief he desired. Harold Tressler stated that in July or August, 1976, petitioner attempted to induce Tressler to file a 27.26 motion, which petitioner then refused to file upon Tressler's refusal to pay for the service. In addition, according to Tressler, petitioner solicited Tressler to file a grievance form stating that "if he could get enough forms against the Warden, he could get him fired." Further evidence of petitioner's writ-writing for harassment purposes is illustrated by the complaint which petitioner filed on October 14, 1976, in the United States District Court for the Eastern District of Missouri, naming himself as plaintiff "on behalf of" certain named women "and all unknown women held at Missouri State Penitentiary, Jefferson City, Mo."[10] Petitioner admits that he did not speak with the women inmates prior to filing the action, and that he had no written consent from the women for filing the complaint. Nevertheless, petitioner contends that he received oral authorization from the women through their husbands, friends, and relatives. Asked on cross-examination to identify those husbands, friends, and relatives, however, petitioner was unable to recall any of them except one Richard Smothers, husband of named plaintiff Linda Smothers, who allegedly was then incarcerated in the Missouri State Penitentiary. Moreover, Warden Wyrick testified that the women incarcerated at the penitentiary had never requested a jailhouse lawyer, or petitioner in particular, and that no such request had been made by any husbands, relatives, or friends of the women. Indeed, the Warden stated that when the women

---

to see inmate Green prevented from charging us for this legal work."

**9.** Raymond Cole stated that petitioner charged him fifteen packs of cigarettes as a fee for preparing a two-page writ. Cole also stated that he was present when petitioner made similar demands of inmates Ronald Valentine and James Gee. James Gee testified that although he paid petitioner in cigarettes and stamps for the preparation of a motion under Missouri Rule 27.26, petitioner never completed the motion. When Gee later sought aid from petitioner and refused to pay the price demanded, petitioner refused to assist Gee. Inmate Ronald Valentine stated that petitioner charged him fifteen packs of cigarettes and 25 stamps for preparation of an institutional grievance form. Harold Tressler, who is now serving as the "inmate lawyer" for the Administrative Segregation Unit, testified that petitioner refused to file a 27.26 motion when Mr. Tressler refused to pay the $20.00 which petitioner demanded. In addition, Tressler stated that since Tressler's appointment as "inmate counsel," petitioner has offered to assist him with the work and to share the resulting legal fees. Inmate Darrell Randall testified that he twice paid petitioner $25.00, in the form of two checks mailed to petitioner's inmate account by Rev. Douglas Chandler of Kansas City, Missouri, a member of Randall's church. These payments were ostensibly to cover the costs of supplies used in filing for Randall an appeal brief in the state court and a complaint in this Court for relief under the civil rights statute, 42 U.S.C. § 1983. Randall testified that petitioner had acknowledged to him the receipt of both checks, and that in informing Randall of the amount of his fee, petitioner "looked around the cell" for things of value and "picked a sum out of the air."

**10.** The complaint in that action, No. 75 914–C, which was received in evidence as Respondent's Exhibit 20, seeks declaratory and injunctive relief and $1,000,000 damages against defendants Edward E. Haynes, Director of the Missouri Division of Corrections, and Donald W. Wyrick, Warden of the Missouri State Penitentiary, and alleges violations of the women inmates' constitutional rights arising from their confinement in the "death row" section of the Missouri State Penitentiary.

learned that petitioner had filed the complaint, they were "mad about it."

■ Additionally, the Court takes judicial notice of the pleadings and testimony in two other cases pending on its docket at the time of the evidentiary hearing on the motion now at bar. In the case of *Randall v. State of Missouri, et al.,* No. 76 CV 124–C, a civil rights action in which the complaint was drafted by petitioner for a fee of $25.00, plaintiff Darrell Randall testified that contrary to the simple issue he desired to raise, 90% of his complex and lengthy petition "was Clovis Green". Similarly, the Court notes the case of *Crossman v. Honorable Elmo B. Hunter, et al.,* naming as defendants all the judges of the United States District Court for the Western District of Missouri and the Chief Judge of the United States Court of Appeals for the Eighth Circuit, which was filed by inmate Richard Crossman on September 8, 1976. Crossman testified in the hearing on the instant motion that petitioner helped him draft the complaint in that case. Although Crossman also claimed that the case presented issues in which he personally was interested, the Court notes Crossman's seeming unfamiliarity on cross-examination with the issues presented in the case, and the Court further takes judicial notice of the striking similarity between the complaint in the Crossman case and the complaint filed by petitioner in Civil Action No. 76 CV 100–C.[11]

Perhaps most significantly, this Court has found petitioner to have engaged in a deliberate, intentional, knowing attempt to deceive the Court as to his true financial status in order to obtain leave to proceed in *forma pauperis* with his highly numerous lawsuits.[12] Having thus demonstrated himself to be untrustworthy and deliberately deceptive, with regard to such an important matter, petitioner clearly is not an individual well-qualified to aid other inmates in preparation of legal documents. This conclusion is borne out by the testimony of inmate Robert Luscious X. Toney, who testified during the hearing on respondent's motion that petitioner aided him in filling out the Court-provided form affidavit in support of leave to proceed in *forma pauperis.* Mr. Toney indicated that despite the unqualified language of the form questions, petitioner specifically advised him that he need not disclose to the Court any gifts of money received during the past 12 months

11. Civil Action No. 76 CV 100–C was transferred to the Eastern District of Missouri because it named as defendants all judges of the Western District. In that action, as discussed briefly *supra,* Judge Wangelin enjoined petitioner from filing future actions concerning the administration of the United States District Court for the Western District of Missouri. It appears to this Court that two weeks after entry of Judge Wangelin's order, by "assisting" Crossman in the preparation of his complaint, petitioner intended once again to assert his own claims and in so doing to evade Judge Wangelin's order.

12. Testimony and evidence adduced in support of respondent's Motion for Permanent Injunction led the Court to order on November 1, 1976, that leave to proceed in *forma pauperis* with this cause be withdrawn and that petitioner's claims be dismissed. On November 2, 1976, the Court withdrew or denied leave to proceed in *forma pauperis* with six of petitioner's additional pending actions on the same basis. (Civil Actions No. 76 CV 99–C, No. 76 CV 103–C, No. 76 CV 122–C, No. 76 CV 158–C, No. 76 CV 173–C, and No. 76 CV 183–C) To summarize briefly, the evidence is overwhelming that during the period in which petitioner sought leave to proceed in the above causes without pre-payment of fees or costs, claiming to be a pauper, petitioner received an income in excess of $230.00, spent over $230.00 on other items, including over $150.00 in the inmate canteen, frequently "bartered" for the sale of law books which he received free of charge, and often, if not always charged other inmates for his legal services. Petitioner frequently receives gifts of money from his mother and other "pen pals" which he contends belongs not to him personally but to him, as a minister of the Human Awareness Universal Life Church, founded by petitioner. In view of the record concerning petitioner's expenditures, however, and the unmistakable wording of the Court's form affidavit in support of leave to proceed in *forma pauperis,* the Court has found petitioner's testimony on this subject to be unworthy of belief. In addition, the Court has taken judicial notice of petitioner's sworn statement in *Green v. Wyrick,* No. 75 CV 165–C, that he possesses a substantial sum of money in a Swiss bank account.

if such gifts did not constitute a "steady income"; Mr. Toney further testified that petitioner asked him no questions concerning his financial status while preparing the affidavit and made no attempt to ascertain the truth of Mr. Toney's answers. Thus, not only has petitioner intentionally attempted to mislead the Court concerning his own financial status; petitioner has misled at least one other inmate as to the manner in which he should report his income to the Court.[13]

■ Accordingly, because petitioner has engaged in a gross abuse of the judicial process, has willfully deceived this Court, and because for all the reasons summarized above, petitioner is singularly ill-suited to assist other inmates in preparation of legal documents, or to represent other inmates in court proceedings, petitioner should be enjoined from any further writ-writing activities on behalf of others. In reaching this conclusion, the Court is, of course, well aware of the holding of the United States Supreme Court in *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1968), that without providing an available alternative, a state may not deprive prisoners of the assistance of fellow inmates in preparing petitions for post-conviction relief. Unlike the situation in *Johnson,* however, where a prison regulation unqualifiedly provided that no inmate would be permitted to advise, assist or otherwise aid another inmate to prepare writs or other legal matters, neither respondent, nor the Missouri State Penitentiary, nor the Court contemplates a blanket injunction against writ-writing. Nor does the penitentiary fail to provide an available alternative to the writ-writing services of Clovis Carl Green, Jr.[14]

■ This Court recognizes, and concurs wholeheartedly, in the Supreme Court's pronouncement that "it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Johnson v. Avery,* 393 U.S. at 485, 89 S.Ct. at 749; see *Ex Parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *White v. Ragen,* 324 U.S. 760, 762, 65 S.Ct. 978, 89 L.Ed. 1348 (1942). Nevertheless, this Court believes that enjoining petitioner from conducting his writ-writing business in no way deprives those unable themselves, with reasonable adequacy, to prepare their petitions, of access to the constitutionally and statutorily protected availability of the writ of habeas corpus or of other meaningful access to the courts. Instead, the Court finds this case akin to the situation described in Mr. Justice White's dissent, joined by Mr. Justice Black, in *Johnson v. Avery,* supra at 499, 89 S.Ct. at 756:

Although some jailhouse lawyers are no doubt very capable, it is not necessarily the best amateur legal minds which are devoted to jailhouse lawyering. Rather, the most aggressive and domineering personalities may predominate. And it may not be those with the best claims to relief who are served as clients, but those who are weaker and more gullible. Many assert that the aim of the jailhouse lawyer is not the service of truth and justice, but rather self-aggrandizement, profit, and power.

. . . Codes of ethics, champerty, and maintenance, frequently have little meaning to the jailhouse lawyer, who solicits business as vigorously as he can. In the petition itself, outright lies may serve the jailhouse lawyer's purpose since by

---

13. The Court notes further Mr. Toney's testimony that immediately prior to the filing of the above lawsuit, entitled *Toney v. Wyrick,* No. 76 CV 155–C, indeed, after the petition had been typed but before it was mailed to the Court, Mr. Toney withdrew approximately $77.00 from his inmate account in the form of a check mailed to a friend, and spent approximately $50.00 in the inmate canteen. Mr. Toney also testified that petitioner had advised him to "make sure he had no money in his account

before he checked (that box on the form affidavit)."

14. See *State v. Turley,* 452 S.W.2d 65, 66 (Mo. 1970), in which the Missouri Supreme Court stated that "(t)his jurisdiction 'provides some reasonable alternative' (to "prison 'writwriters' ") *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, to assist indigent prison inmates in the preparation of post-conviction remedies . . . .."

procuring for a prisoner client a short trip out of jail for a hearing on his contentions the petition writer's credibility with the other convicts is improved.

■ Although petitioner called several inmates as witnesses in support of his opposition to respondent's Motion for Permanent Injunction, no prisoner testified that petitioner was the only person available who would write out a writ for him or that guards or other prison functionaries would not furnish the necessary help. In fact, the testimony of several witnesses, including those called by petitioner himself, revealed that, in addition to the usual, informal writ-writing situation the penitentiary has established a system of employment for qualified inmates to serve as "inmate lawyers" within each unit of the penitentiary, and to receive compensation from the penitentiary for their services. In addition, this Court has followed a generous policy in the past, and now expresses its willingness in the future, to provide Court-appointed counsel to assist indigent inmates with preparation of pleadings in nonfrivolous cases.[15] Under the circumstances presented in this case, there is no doubt that reasonable access to the courts will remain for other inmates despite petitioner's inability to prepare or assist in preparation of lawsuits for them.[16] In accordance with the recognition by the majority in *Johnson v. Avery* that a state may impose reasonable restrictions and restraints upon the acknowledged propensity of a prisoner to abuse the giving of assistance in the preparation of applications for relief, see 393 U.S. at 490, 89 S.Ct. 747, this Court concludes that the only reasonable and effective restraint upon the acknowledged propensity of Clovis Carl Green, Jr., to abuse the writ-writing privilege is to enjoin him from such future conduct.

It is the rights of the potential prisoner clients, not the right of the would-be jailhouse lawyer, which most need protecting in this case. See White, J., dissenting, 393 U.S. at 502, 89 S.Ct. 747. While petitioner may assert his own right to petition the courts for redress of grievances, he has no right to be a writ-writer, nor may he assert, under these facts or any others, that enjoining his writ-writing deprives others of their constitutional rights.[17]

Ample precedent exists for the injunction to be issued herein. On June 3, 1976, in the case of *Green v. Wyrick*, Misc. No. 76–8096, the Eighth Circuit Court of Appeals observed that petitioner appeared to be abusing his right to access to the courts, and suggested:

"(I)t occurs to us that in connection with the petition we are transferring, or otherwise, the district court may desire to give consideration to issuing an order calling on petitioner to show cause why he should not be enjoined from filing any additional petitions based on any alleged causes of action claimed to have been accrued from or on account of his convic-

---

**15.** This Court again concurs with Justices White and Black in observing that to the extent that it is easy to state a claim, any prisoner can do it, and need not submit to the mercies of a jailhouse lawyer. 393 U.S. at 500, 89 S.Ct. 747. Nor does the majority of prisoners require appointment of counsel. Where assistance of counsel is necessary, however, it is freely available through inmate writ-writers or court-appointed representation.

**16.** "Under *Johnson v. Avery*, supra, the Government need not furnish every means of access to the courts. It need only provide some opportunity for a prisoner to gain equal access to the courts." *Noorlander v. Ciccone*, 489 F.2d 642, 650 (8th Cir. 1973).

**17.** Petitioner has not raised this argument in opposition to respondent's motion. Had he sought to assert the rights of others in his own defense, however, he clearly would lack the requisite standing. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). See also *Wilson v. Dixon*, 251 F.2d 338, 339 (9th Cir. 1958), wherein the Ninth Circuit Court of Appeals dismissed as "frivolous" a petition for "writ of assistance" filed by an inmate of one state prison, as "relator and best friend" of an inmate in a second state prison, to compel the wardens of those prisons to allow the petitioner to correspond with the second inmate "on matters of vital importance" to the appeal in the habeas corpus case of the second inmate, and to allow the petitioner to use prison law books in aid of that appeal.

tion or confinement prior to May 17, 1976."

In *Green v. United States of America, et al.*, No. 76 CV–100–C, *supra*, the Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, on August 23, 1976, did forever and permanently enjoin petitioner from filing any further lawsuits concerning the administration and operation of the United States District Court for the Western District of Missouri.[18]

Other courts have issued broad injunctions for the purpose of preventing harassive lawsuits. In *Adams v. American Bar Association*, 400 F.Supp. 219 (E.D.Pa. 1975), for example, seven individuals, acting *pro se,* brought an action against virtually the entire federal and Pennsylvania judiciary, including judges of the United States Tax Court and Court of Claims, state, local, and national bar associations, United States attorneys, various attorneys from the Department of Justice and the Internal Revenue Service, certain senators, cabinet officers, certain spouses, and the President of the United States. Citing "the extraordinary number of lawsuits which have been filed by plaintiffs throughout the country," the defendants sought an injunction pursuant to 28 U.S.C. § 1651 to prevent plaintiffs from further harassing judges, prosecutors and professional associations and "causing an undue expenditure of time, money and effort at all levels of the judicial system." 400 F.Supp. at 227. Concluding that "plaintiffs' practice of engaging in vexatious litigation and harassing government officials is likely to continue unless enjoined," the court entered its Order "perpetually enjoining and restraining the plaintiffs from instituting any further action or encouraging, aiding, assisting, abetting or acting in concert with any other person or persons to institute any future action based on any claim or cause of action which was or could have been asserted by plaintiffs in the complaint herein." Id. at 228.

Similarly, in *Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I.1963), app. dism'd, 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714, the plaintiff sued several judges, United States attorneys and the clerk of the court, alleging that he was "aggrieved by actions of various federal and Massachusetts state court judges in prior litigation instituted by him . . ." Upon defendants' motion for a permanent injunction, the court observed that there was "little doubt as to the power of this Court to protect these litigants from repeated and purely vexatious suits, and to protect itself from unwarranted and patently frivolous impositions upon its jurisdiction." 210 F.Supp. at 910. Accordingly, the court ordered that the plaintiff be perpetually enjoined and restrained from continuing, instituting or prosecuting, without prior leave of court, this or any other legal proceedings in any court against any state or federal judge, officers or employees, for actions taken in the course of their official duties.

The case of *Boruski v. Stewart*, 381 F.Supp. 529 (S.D.N.Y.1974), resulted in a similar injunction. Plaintiff therein, who had been unlawfully discharged from military service and had recovered back pay in his first lawsuit, additionally filed a large number of actions against the Veterans Administration, the General Accounting Office, the Air Force, the Justice Department, and various federal judges and officials. Noting that plaintiff's pattern of engaging in repetitious and vexatious litigation made it unlikely that such conduct was unlikely to continue unless enjoined, the court ordered that plaintiff be perpetually enjoined and restrained from instituting any further action against the defendants in any court in the United States based on any matters set forth in the complaint therein for actions taken by such defendants in the course of their official duties as judge, officer, attorney or employee.

In *Ruderer v. United States*, 462 F.2d 897 (8th Cir. 1972), cert. den., 409 U.S. 1031, 93

---

**18.** In so doing, Judge Wangelin observed that the injunction was necessary because petitioner had "chosen to obstruct other good faith litigants from access to the court by his continual filing of frivolous lawsuits. . . . ."

S.Ct. 540, 34 L.Ed.2d 482 (1972), wherein plaintiff was permanently enjoined from commencing any further proceedings in an attempt to relitigate facts surrounding his discharge from the Army, the Eighth Circuit Court of Appeals observed that "in this day of burgeoning court calendars, he must be restrained if others are to have (their day in court)." 462 F.2d at 899. Similarly, in *Ruderer v. Department of Justice*, 389 F.Supp. 549 (S.D.N.Y.1974), observing that "(t)he court is authorized to enjoin a continuance of this type of vexatious and frivolous litigation," 389 F.Supp. at 550–51, a second district court enjoined the same plaintiff from commencing any further action against any person on account of his discharge. In *Meredith v. John Deere Plow Company*, 261 F.2d 121 (8th Cir. 1958), cert. den., 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 (1959), the Court of Appeals for the Eighth Circuit observed that "(T)he subjecting of another to repeated, baseless and vexatious suits at law on some particular subject matter is, without reference to other considerations, a sufficient ground for the issuance of an injunction against the perpetrator. (Citations omitted.)" 261 F.2d at 124. See also, *Ward v. Pennsylvania Central Transportation Co.*, 456 F.2d 1046 (2d Cir. 1972); *Clinton v. United States*, 297 F.2d 899 (9th Cir. 1961), and *600 California Corporation v. Harjean Company*, 284 F.Supp. 843 (N.D.Tex.1968).

This Court finds substantial precedent for its authority to enjoin petitioner from his "writ-writing" activities on behalf of others, both on the basis of these prior cases of injunction from abusive activities, and under the "All Writs Statute," 28 U.S.C. § 1651.[19] Moreover if the authorities and principles which have been cited do not constitute sufficient precedent for the issuance of an injunction in this case, it is time that such a precedent should be made. For, as this Court observed on an earlier occasion, unless the Courts of this nation are to be deemed to be powerless to stop such a flagrant abuse of the judicial process, one man will be able to preempt so much judicial time at the trial and appellate levels as to thwart the very ability of the judicial system to carry out its necessary judicial function of properly processing its criminal and civil docket of cases filed by other litigants who may have meritorious matters. The time clearly has come to take appropriate action to the end that Clovis Carl Green, Jr.'s history of intentional and gross abuse of the judicial process is terminated.

Accordingly, based upon this Court's findings that petitioner has engaged in a flagrant and gross abuse of the judicial process, that he repeatedly files frivolous and harassive lawsuits, that he has deliberately and intentionally deceived this Court with respect to his financial status, that he fails to follow the rules and procedures of the Court in filing actions, that he does not faithfully represent the interests of other inmates whose actions he files, that he misleads other inmates in preparation of their own lawsuits, that he charges other inmates for his legal services, and that an adequate and available alternative exists to assure other inmates access to the courts without the aid of petitioner, it is hereby,

ORDERED that petitioner, Clovis Carl Green, Jr., be, and he is hereby, perpetually enjoined and restrained from filing in the future in the United States District Court for the Western District of Missouri on behalf of any other inmate incarcerated within the Missouri penal system, any action against the State of Missouri or any of its officials or employees, including the state judiciary, for any alleged cause of action arising out of their criminal conviction or their resultant confinement incident thereto; and it is further

ORDERED that petitioner, Clovis Carl Green, Jr., be, and he is hereby, perpetually enjoined and restrained in the future from acting as a "writ-writer" or "jailhouse lawyer" for any other inmate within the Mis-

---

**19.** Subsection (a) of that statute provides, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

souri penal system, by preparing or assisting in any way, or acting in concert with any other inmate in the preparation of any writ, pleading, motion or other document for use in the United States District Court for the Western District of Missouri, from soliciting the filing of any document for use in the United States District Court for the Western District of Missouri, from dictating or writing a writ, pleading, motion, or other document for use in the United States District Court for the Western District of Missouri, or from advising any other inmate as to what such a document should contain. It is further

ORDERED, pursuant to Rule 54, Federal Rules of Civil Procedure, that this is a separately appealable final judgment, and the Clerk of the Court is directed to enter judgment in accordance with this Order.[20]

20. The other relief by way of an injunction against petitioner from filing lawsuits on his own behalf on the present record is not granted.