**In the Matter of the Alleged Contumacious Conduct of Clovis Carl GREEN, Jr., Appellant.**

**No. 78–1442.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1978.

Decided Nov. 9, 1978.

---

Dale C. Doerhoff of Cook, Vetter & Doerhoff, Jefferson City, Mo., on brief for appellant.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., on brief for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal by Clovis Carl Green, Jr., an inmate of the Missouri State Penitentiary, which is located at or near Jefferson City, Missouri, from a judgment of the United States District Court for the Western District of Missouri (District Judge Russell G. Clark) holding Green guilty of criminal contempt of the district court in that he willfully violated an injunction issued by that court in 1976 restraining him from "writ writing" activities in behalf of other convicts.[1] Appellant, who will hereinafter be referred to either by surname or as "respondent," was found guilty on three out of eight charges of contempt after a bench

---

1. The injunction was issued by United States District Judge Elmo B. Hunter. Over the past several years Judge Hunter and a number of other judges have had a great deal of experience with Green.

trial before Judge Clark. He was found not guilty on the other charges. He was sentenced to imprisonment for five months on each of the three charges on which he was found guilty, with the sentences to be served concurrently after Green completes service of the sentence or sentences that he is now serving in the state institution.

Final judgment of the district court was entered on June 8, 1978, and respondent immediately filed notice of appeal.[2] For reversal respondent contends:

1. That the 1976 injunction was unconstitutional and void under the rules laid down in *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and cases following and applying that decision in various situations.

2. That the injunction encroached on religious rights of respondent and of other inmates of the Penitentiary.

3. That the documents referred to in Paragraphs VI, VII and VIII of the show cause order issued by Judge Hunter in April of this year did not in fact violate the 1976 injunction.[3]

### I.

We are not advised as to the details of respondent's criminal record; it appears, however, to be extensive. At the moment it seems that respondent is serving a ten year sentence in the Missouri Penitentiary which sentence was imposed by the Circuit Court of Jackson County, Missouri in 1975 following respondent's plea of guilty to a charge of rape. Respondent has persistently attacked that conviction since at least 1976, but we are not concerned in this proceeding with the validity of that conviction; we simply remark in passing that his attacks on the conviction have not been successful.

Respondent is not only a recidivist criminal; he is also an inveterate writ writer for his own benefit and for the benefit of other convicts from whom he receives fees for his services. In other words, respondent engages in the practice of law while in prison.

Judge Hunter found in 1976 that respondent's writ writing activities have been completely irresponsible and that many of them were not undertaken in good faith. Since his confinement in the Missouri institution respondent has been in constant conflict with Warden Donald W. Wyrick and other prison personnel, complaining about the conditions of his confinement and about institutional practices.

One of the controversies in which respondent has been engaged was with the Protestant Chaplain of the Penitentiary, a Reverend Garrott. Some idea of the extent of Green's writ writing for his own benefit can be gained from a reading of Judge Hunter's opinion dismissing respondent's civil rights complaint against Garrott. *Green v. Garrott*, 71 F.R.D. 680, 685–92 (W.D.Mo.), *aff'd without opinion* (8th Cir. 1976, Misc. No. 76–8184). Judge Hunter found that between September 20, 1972 and July 15, 1976 Green had filed on his own behalf in federal court in the Western District of Missouri 92 separate petitions, not one of which had been upheld. And the Judge further found that 14 of those petitions had been filed between June 4 and July 15, 1976. It was further found that during roughly the same period respondent had filed 47 petitions in other federal district courts, and had filed 24 petitions in the trial courts of the State of Missouri.

In August, 1976 respondent was permitted to file in the district court a petition which in part was an attack by way of

---

2. Some weeks after the original notice of appeal was filed, respondent moved for an order enlarging him on bail pending the outcome of the appeal. Judge Clark entered an order denying that application, and Green appealed from that order. That subsidiary appeal has been consolidated with the principal one and has not been given a separate appellate number.

3. Those arguments are set out in the principal brief filed on behalf of respondent by his attorneys. Some additional arguments are set out in a pro se reply brief filed by respondent. We have considered the additional arguments and find them to be without merit.

habeas corpus on his 1975 rape conviction and in part a civil rights complaint against Warden Wyrick and other prison personnel complaining of his confinement in administrative segregation and loss of good time and seeking affirmative relief including a large award of damages.

That case was docketed as No. 76 CV 147–C. In due course Warden Wyrick filed an answer denying liability, and in addition he filed what amounted to a counterclaim praying that Green be enjoined from writing any further writs for use in connection with litigation in federal court in the Western District of Missouri. Judge Hunter severed the habeas corpus claim from the civil rights claim.

The district court dealt with the habeas corpus claim in an opinion filed on November 1, 1976 and reported as *Green v. Wyrick*, 428 F.Supp. 728 (W.D.Mo.1976). That opinion is not involved here.

As to the Warden's counterclaim, the district court conducted an evidentiary hearing and on November 10, 1976 dealt with the counterclaim in a full opinion reported as *Green v. Wyrick*, 428 F.Supp. 732 (W.D.Mo. 1976). Judge Hunter made the following detailed findings:

> [T]hat petitioner [Green] has engaged in a flagrant and gross abuse of the judicial process, that he repeatedly files frivolous and harassive lawsuits, that he has deliberately and intentionally deceived this Court with respect to his financial status, that he fails to follow the rules and procedures of the Court in filing actions, that he does not faithfully represent the interests of other inmates whose actions he files, that he misleads other inmates in preparation of their own lawsuits, that he charges other inmates for his legal services, and that an adequate and available alternative exists to assure other inmates access to the courts without the aid of petitioner . . . .

*Id.* at 743.

On the basis of the findings above summarized the district court concluded that respondent should be enjoined from writing any more writs for other inmates for use in federal court in the Western District of Missouri and from otherwise practicing law in the Penitentiary with litigation in the district court in view. In due course we will set out the exact terms of the injunction that was issued.

Judge Hunter refused to allow Green to appeal from the decree in forma pauperis, and a panel of this court likewise refused leave to so appeal. *Green v. Wyrick* (8th Cir. 1976, No. 76–8253) (unpublished opinion). Thus no appeal was ever perfected.

## II.

It does not appear that respondent violated the injunction during 1977. However, in early 1978 he began to submit documents to the clerk of the district court on behalf of himself and other inmates, and on April 11, 1978 Judge Hunter, proceeding under Fed. R.Crim.P. 42(b), issued an order calling on Green to show cause why he should not be found guilty of criminal contempt on account of his alleged willful disobedience of the 1976 injunction. The order was made returnable on May 23, 1978 and contained eight specifications of contempt each set out in a separately numbered paragraph of the order. The order was duly served on respondent by the Marshal.

The order appointed Mr. Charles Sapp of the Columbia, Missouri, Bar to represent respondent. The Attorney General of Missouri or an Assistant Attorney General to be designated by him was directed to conduct the prosecution in place of the United States Attorney.[4]

Although Mr. Sapp is a competent attorney, respondent preferred in general to conduct his own defense and did so, although Mr. Sapp was available to respondent throughout the hearing that will be mentioned, and it seems that respondent made some use of his services.

---

4. In view of the nature of the litigation this action by the district court was perfectly permissible. C. Wright, Federal Practice & Procedure, Criminal, § 711, p. 175.

Respondent moved to disqualify Judge Hunter and also filed a pro se response to the show cause order. With the consent of Judge Clark the case was transferred to him on May 9, 1978, and he conducted further proceedings, including an evidentiary hearing that was held on May 23. Following that hearing Judge Clark filed a detailed but unpublished opinion dealing with the issues before him.

The trial judge rejected respondent's contention that he had been prevented from making an effective defense by misconduct on the part of prison personnel, including threats of reprisals and violence. However, Judge Clark found respondent not guilty on the specifications contained in the first five paragraphs of the show cause order. He did, as stated, convict the respondent with respect to the items identified in Paragraphs VI, VII and VIII.

So much for the history of the case.

### III.

In deciding the case the district court started with the proposition that since there had been no appeal from Judge Hunter's 1976 injunction, the validity of that injunction was not open to question in the instant contempt proceeding, and that the question was whether and to what extent respondent had violated the injunction.

■ We agree. In passing upon Warden Wyrick's application for an injunction the district court had jurisdiction of the cause and of the parties thereto; respondent had his full day in court. Since there was no

appeal, the injunction issued by the district court became final. Respondent, therefore, was bound by the decree. *See Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Worden v. Searls*, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887).

In agreeing with the approach taken by the trial judge we do not suggest for a moment that had an effective appeal been taken from the initial ruling of Judge Hunter, he would have been reversed, assuming that his underlying findings of fact were not clearly erroneous, and there is no reason to believe that they were.

■ We grant without difficulty that prison inmates have a constitutionally protected right to the services of inmate writ writers, at least where legal assistance from qualified and professionally trained lawyers is not available. But, we do not believe that *Johnson v. Avery, supra,* and its progeny hold that a court is powerless to protect itself and its process from abuse by unscrupulous prison inmates who happen to be articulate and to have some knowledge of criminal law and procedure. If the courts possess power to discipline and disbar unethical lawyers in the civilian world, certainly they ought to be able to exercise the same power with respect to unethical and irresponsible inmates of prisons who purport to provide legal representation to other inmates.[5]

---

5. While the claim of Green that the injunction impinged upon his federally protected religious rights and those of other inmates is not properly before us in view of the finality of the 1976 injunctive decree, we nevertheless deem it well to comment on the claim at this point.

Respondent asserts that he is the minister of a church known as the Human Awareness Universal Life Church and that there are inmates of the Penitentiary who are also members of that Church. Respondent also asserts that the tenets of the Church obligate him to perform legal services for other inmates, and that inmate members of the Church are required to use the services of respondent if they desire legal representation.

Assuming arguendo that those assertions are factually true, we find respondent's claim to be without legal merit. The claim is somewhat similar to claims that have been rejected in other cases involving the efforts of laymen to practice law and to the claims of certain litigants that they were entitled to be represented by laymen rather than by licensed lawyers. *See Turner v. American Bar Ass'n*, 407 F.Supp. 451, 480–81 (N.D.Tex.1975), a multi-district decision, which was affirmed by this court as far as the Eighth Circuit was concerned in *Pilla v. American Bar Ass'n*, 542 F.2d 56 (8th Cir. 1976); *see also United States v. Pilla*, 550 F.2d 1085 (8th Cir. 1977).

## IV.

This brings us to the basic question before us, which is whether in connection with the items mentioned in Paragraphs VI, VII and VIII of the show cause order the respondent violated the 1976 injunction.

The operative portions of the 1976 decree appear in 428 F.Supp. at 743–44. Those portions consist of three paragraphs, each commencing with the word "ORDERED." We are concerned here with the first two of those paragraphs which are as follows:

ORDERED that petitioner, Clovis Carl Green, Jr., be, and he is hereby, perpetually enjoined and restrained from filing in the future in the United States District Court for the Western District of Missouri on behalf of any other inmate incarcerated within the Missouri penal system, any action against the State of Missouri or any of its officials or employees, including the state judiciary, for any alleged cause of action arising out of their criminal conviction or their resultant confinement incident thereto; and it is further

ORDERED that petitioner, Clovis Carl Green, Jr., be, and he is hereby, perpetually enjoined and restrained in the future from acting as a 'writ-writer' or 'jailhouse lawyer' for any other inmate within the Missouri penal system, by preparing or assisting in any way, or acting in concert with any other inmate in the preparation of any writ, pleading, motion or other document for use in the United States District Court for the Western District of Missouri, from soliciting the filing of any document for use in the United States District Court for the Western District of Missouri, from dictating or writing a writ, pleading, motion, or other document for use in the United States District Court for the Western District of Missouri, or from advising any other inmate as to what such a document should contain   .   .   ..

In passing upon the guilt or innocence of respondent with respect to the items referred to in the last three paragraphs of the order to show cause issued by Judge Hunter, Judge Clark was confronted with a two-fold question: (1) Did the items in question actually constitute violations of the injunction assuming a sufficient connection between them and the respondent? (2) If so, had a sufficient connection between the items and respondent been shown? Judge Clark considered the second question first with respect to each of the items.

Paragraph VI of the show cause order described a letter written to the court in January, 1978 by inmate Billy Grisso. The letter was signed by Grisso, and it requested the reinstatement of a suit that Grisso had filed but that had been dismissed later at his request. Grisso testified that he signed the letter but that he did not know who wrote it. Ms. Bernita Wolking, a deputy clerk of the United States District Court for the Western District of Missouri, stationed at Jefferson City where the case was tried, identified the handwriting or printing in which this letter was written as being that of respondent.[6] The trial judge found beyond a reasonable doubt that respondent had prepared the Grisso letter, and the court also found that the letter amounted to a request for affirmative judicial action by the district court and "thus attains the posture of a pleading which clearly falls within the scope of the November 10, 1976 injunction."

The item mentioned in Paragraph VII was a request for a "class action petition" on behalf of Green and of inmates Francis and Nevills. Nevills could not identify the letter, and Francis said that he had never seen it before. Again, Ms. Wolking identified the printing and signature on the letter as being those of respondent. The court found that Green prepared and mailed the letter, that it amounted to a request for

---

**6.** Assuming that Ms. Wolking in her official capacity is called upon to handle prison petitions with many of them being prepared by a relatively few writ writers, there would certainly be nothing unusual in her being familiar with the handwriting, printing and signature of as persistent a writ writer as is Green, and she may also be quite familiar with the manner in which he expresses himself when he prepares a petition or other document.

judicial relief, attained the "posture of a pleading" and was violative of the injunction.

Finally, the item referred to in Paragraph VIII of the order was a formal motion filed on behalf of inmate James Barber in a case then pending in the district court. The motion requested the appointment of regular counsel to represent Barber; it specifically stated that at the time of the filing of the motion Barber was relying on Green to prepare his motions, but that he was apprehensive that he and Green would be separated. Barber testified that Green prepared that motion in his presence. The trial judge found that Green had prepared the motion, and that in so doing he violated Judge Hunter's injunction.

We are satisfied that Judge Clark's findings as to Green's connection with the items just described are fully supported by the evidence. We have considered and reject the contentions advanced by Green or on his behalf that the items were not qualitatively sufficient to constitute materials prohibited by the district court's injunction. It is clear to us that beginning in early 1978 Green again undertook to write writs and practice law on behalf of other inmates, which is precisely what he had been enjoined from doing.

Judge Clark stated that he was convinced beyond a reasonable doubt of the guilt of respondent with respect to the items that have been described. His holding was justified under the law and the evidence, and the judgment of the district court is affirmed.

Affirmed.