James **HENDERSON** and Earl V. **Thompson, Jr., Plaintiffs,**

v.

James C. **RICKETTS,** Executive Director, Colorado Department of Corrections, William Wilson, Superintendent, Canon Correctional Facility, Richard Mills, Assistant Superintendent, Canon Correctional Facility, and John Snow, Investigator, Canon Correctional Facility, Defendants.

Civ. A. No. 80–K–993.

United States District Court, D. Colorado.

Oct. 20, 1980.

James Henderson and Earl V. Thompson, Jr., pro se.

Robert M. Petrusak, Asst. Atty. Gen., Denver, Colo., for defendants.

## ORDER OF DISMISSAL

KANE, District Judge.

This case brings into sharp focus ample justification for the concerns expressed by Judge Doyle in his concurring opinion in *Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1980). The plaintiffs are inmates at the Canon Correctional Facility, State of Colorado. They bring this suit pursuant to 42 U.S.C. § 1983 alleging violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. The gravamen of the complaint is that defendant investigator Snow, under the supervision of the other named defendant officials of the Colorado Corrections System, removed from the United States mails a check drawn by plaintiff Henderson to plaintiff Thompson's order for legal services rendered. Acting as a "jailhouse lawyer," Thompson agreed to file the necessary motions to secure Henderson's trial transcripts and assist him in the preparation of a federal writ of habeas Corpus and a post–conviction motion for a fee of $125. The check was for $70. Plaintiffs allege that the defendants' conduct constituted an illegal search and seizure, that the taking of their personal property was without due process of law, and that the prohibition against the giving and receipt of legal fees for jailhouse lawyering constituted an infringement of plaintiffs' right of access to the courts. They also allege violations of the Eighth Amendment for inadequate library facilities and legal assistance.

Provisions of the Code of Penal Discipline at the Canon Correctional Facility prohibit the transfer of funds between inmates. The provisions are designed to preserve order and discipline within the institute by discouraging practices which could result in the "extortionate collection of fees among inmates...." Defendants contend that Snow's actions were pursuant to these provisions. Defendants move to dismiss plaintiffs' complaint arguing that the prohibition on the transfer of "legal fees" for services rendered is constitutionally permissible under the rule of *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). I agree. The motion to dismiss is granted.

I have commented before that prisoners have a constitutional right to meaningful access to the courts and that states have an affirmative obligation to assure such access, *Ramos v. Lamm*, 485 F.Supp. 122, 165 (D.Colo.1979), (citing *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Likewise prison administrators are afforded discretion in maintaining security and order in the prisons. *Laaman v. Perrin*, 435 F.Supp. 319, 327 (D.N.H.1977). *See Bell v. Wolfish*, 441 U.S. 520, 523, 546–547, 99 S.Ct. 1861, 1865, 1878–1879, 60 L.Ed.2d 447 (1979). The Supreme Court has placed a heavy burden on prison administrators to justify any possible impairment of the right of access to the courts. *Wolff v. McDonnell*, 418 U.S. at 580, 94 S.Ct. at 2986, *Johnson v. Avery*, 393 U.S. at 489, 89 S.Ct. at 750. I have ruled previously in *Ramos* that the Canon Correctional Facility

offers inadequate law library access to inmates and assistance to inmates in legal matters. 485 F.Supp. at 166. A high standard of review is triggered once it is determined that a prison administrator has, by regulation, practice or single act, diminished the availability of a judicial forum to hear prisoners' grievances. *Laaman v. Perrin*, 435 F.Supp. at 327. I therefore do not pass lightly on allegations by inmates that their access has been limited. However, the instant prohibition on receipt of "legal fees" is not only acceptable, it is essential.

■ I recognize the well–established principle that inmates may provide legal assistance to other inmates if the state chooses to use the law library system as a means of providing inmates with access to the courts. *See Ramos v. Lamm*, 485 F.Supp. at 166; *Bounds v. Smith*, 430 U.S. at 831–832, 97 S.Ct. at 1499–1500; *Procunier v. Martinez*, 416 U.S. 396, 398, 421–422, 94 S.Ct. 1800, 1804, 1815, 40 L.Ed.2d 224 (1974); *Johnson v. Avery*, 393 U.S. at 488, 89 S.Ct. at 750. Nevertheless the Supreme Court made clear in *Johnson* that:

> the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse the giving and seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and *the imposition of punishment for the giving or receipt of consideration in connection with such activities.*

*Id.* at 490, 89 S.Ct. at 751 (emphasis added). *Accord McCarty v. Woodson*, 465 F.2d 822, 825 (10th Cir. 1972). *See also Bryan v. Werner*, 516 F.2d 233, 237 (3d Cir. 1975), *Craig v. Hocker*, 405 F.Supp. 656, 668 (D.Nev.1975).

■ The allowance of compensation for "legal fees" for jailhouse lawyering presents a probability of abuse that is properly circumscribed. The Tenth Circuit has recognized that the "few old hands or exceptionally gifted prisoners," *Johnson v. Avery*, 393 U.S. at 488, 89 S.Ct. at 750, who act as jailhouse lawyers or writ writers often practice favoritism, bribery, and phys-

ical abuse upon illiterate and ignorant prisoners desiring legal assistance. *Battle v. Anderson*, 614 F.2d at 255. One method by which the provision of inmate legal services can be abused is the requirement of fees for services rendered. The writ writer may charge fees in excess of the amount necessary to perform such services, discriminate among inmates in need of legal assistance in order to attain higher fees, or otherwise take advantage of indigent or illiterate prisoners.

The case of *Green v. Wyrick*, 428 F.Supp. 732 (W.D.Mo.1976), is instructive on this point. In *Green* plaintiff inmate writ writer was enjoined from further pleading on his or others behalf as the result of his "gross abuse of judicial process" by, *inter alia*, not faithfully representing the interests of the other inmates whose actions he filed and by charging inmates for his legal services. *Id.* at 735, 737–738. In *Green* the inmate lawyer made a business out of his legal services, abusing it in various fashions. *See also In re Green*, 586 F.2d 1247 (8th Cir. 1978) (affirming district court holding Green guilty of criminal contempt for violating injunction).

■ Whatever protected property or liberty interest the average citizen may have in holding employment or pursuing a chosen occupation, *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *see Hampton v. Mow Sun Wong*, 426 U.S. 88, 102 & n. 23, 96 S.Ct. 1895, 1904 & n. 23 (1976), a prisoner has no recognized right to conduct a business while incarcerated. *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980). In *French* the court held that the inmate had no protected property interest in running a health food dealership in prison. *See also Stroud v. Swope*, 187 F.2d 850, 851 (9th Cir.), *cert. denied*, 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed. 627 (1951) (no right to secure publication of book), *Garland v. Polley*, 594 F.2d 1220, 1221–1222 (8th Cir. 1979) (no right to conduct leather goods business), *Valentine v. Gray*, 410 F.Supp. 1394, 1396 (S.D.Ohio 1975) (no right to use mails to conduct business). The fact of confinement and the needs of the prison

may impose some limitations on the inmate's constitutional rights, *Ramos v. Lamm*, 485 F.Supp. at 161 (*citing Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129–30, 97 S.Ct. 2532, 2539–40, 53 L.Ed.2d 629 (1977)), including reasonable restrictions on business activities. I hold that a prisoner does not have the right to carry on the business of practicing law without a license.

Because the transfer of funds for legal services among inmates can be prohibited, defendant Snow's action in removing Henderson's check from the mail does not constitute an illegal search and seizure or a denial of due process. Plaintiffs have failed to state a claim upon which relief may be granted regarding these allegations. Further, defendants' actions do not constitute a conspiracy to deprive plaintiffs of their civil rights. However, plaintiffs claim that defendants have failed to provide adequate legal research materials and/or library books for inmates and legal assistance or the employment of attorneys to assist inmates. Plaintiffs are members of the class in *Ramos v. Lamm*, 485 F.Supp. 122 (D.Colo.1980), and relief for this violation is fully available in that action. Thus this claim is redundant and I dismiss it.

In conclusion I hasten to add that defendants' constitutional duty to provide inmates with an opportunity to exercise their right of access to the courts could be fulfilled if reasonable alternatives were considered and adopted. Cases such as this where inmates seek to overcome their legal barriers by resorting to the questionable expertise of their colleagues would then be unnecessary. I refer defendants to the Supreme Court's suggestions in *Bounds*:

> Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part–time consultant basis, and the use of full–time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services offices. *Legal services plans not only result in more efficient and skillful handling of prisoner cases, but also avoid the disciplinary problems associated with writ writers, see Johnson v. Avery*, 393 U.S., [483] at 488, 89 S.Ct. [747] at 750 [21 L.Ed.2d 718]; *Procunier v. Martinez*, 416 U.S. 396, 421–422, 94 S.Ct. 1800, 1815, 40 L.Ed.2d 224 (1974). Independent legal advisors can mediate or resolve administratively many prisoner complaints that would otherwise burden the courts, and can convince inmates that other grievances against the prison or the legal system are ill–founded, thereby facilitating rehabilitation by assuring the inmate that he has not been treated unfairly.

*Bounds v. Smith*, 430 U.S. at 831, 97 S.Ct. at 1499 (emphasis added). Compensation to jailhouse lawyers by other inmates may be prohibited but reasonable access to the courts may not. Therefore, it is

ORDERED that defendants' motion to dismiss be and hereby is granted. It is further

ORDERED that plaintiffs' claims regarding access to the courts by defendants' inadequate provision of library facilities and legal assistance be and hereby are dismissed without prejudice as plaintiffs are members of the class in *Ramos v. Lamm*, 485 F.Supp. 122 (D.Colo.1979). It is therefore

ORDERED that this complaint and civil action are hereby dismissed.