UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond Nelson LOPEZ,
Defendant-Appellant.

No. 76–2039.

United States Court of Appeals,
Ninth Circuit.

Jan. 23, 1978.

Rehearing Denied March 22, 1978.

Jo Ann D. Diamos, Asst. Federal Public Defender, Tucson, Ariz., for defendant-appellant.

Christopher L. Pickrell, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before HUFSTEDLER and WALLACE, Circuit Judges, and WATERS,* District Judge.

WALLACE, Circuit Judge:

Raymond Lopez, a Papago Indian, was charged with second degree murder, 18 U.S.C. §§ 1153, 1111, in the shooting death of his brother, William. Lopez pleaded not guilty and, following a jury trial, was convicted of voluntary manslaughter, a lesser included offense. He presents five issues for review: (1) whether a reference by the prosecutor in the opening statement to inadmissible evidence should have been grounds for a mistrial; (2) whether it was error for the trial judge to refuse to instruct the jury on specific intent and intoxication; (3) whether reference by the prosecutor in his closing statement to defendant's post-arrest silence requires reversal; (4) whether a mistake by the court reporter foreclosed defendant's presentation of a self-defense theory; and (5) whether the jury based its verdict on sufficient evidence. We affirm.

The shooting took place on the evening of February 28, 1976, on the Papago Indian Reservation. Members of the Lopez family and some of their friends had been drinking heavily for some time when an argument apparently erupted between the brothers in the family home. Raymond stepped outside

---

* Honorable Laughlin E. Waters, United States District Judge, Central District of California, sitting by designation.

and called William to come out. Despite his mother's attempts to prevent him from doing so, William complied. Mrs. Lopez closed the door and moments later the family heard a gunshot. Reopening the door, they found Raymond standing several feet from William who had fallen to the ground. Raymond gave his gun to his father who accompanied Raymond to the highway in order to report the shooting. A reservation policeman transported the men back to the Lopez home and radioed for help. Raymond was arrested and taken to the local jail. The following day, an FBI agent arrived to transport Raymond to the county jail. He read Raymond his *Miranda* rights, and Raymond signed a waiver. Raymond then answered the agent's questions regarding his background and the purchase of the gun.

## I

In his opening statement, the prosecutor told the jury that he would produce a witness who would testify that William told her immediately prior to the shooting that he was afraid of Raymond because Raymond had earlier made threats against his life. Lopez's attorney objected, contending that the promised testimony would be inadmissible hearsay. The district judge responded immediately and stated that he would rule on the objection when the testimony was offered. He carefully cautioned the jury that what they were hearing was not evidence but "merely an opening statement," and that they should base their verdict only upon the evidence. After the prosecutor finished his opening statement, the district judge called counsel to the bench and cautioned the prosecutor that unless he could point out an applicable exception to the hearsay rule, the threat testimony would be inadmissible. Lopez's counsel stated:

> And I think they are in a mistrial area because they are prejudicial. That's what I wanted to bring out, Your Honor,

and creates an impression upon the jury that no words are going to erase.

The prosecutor then indicated that he believed there was a valid exception which would enable him to introduce the evidence, possibly the state of mind exception, Rule 803(3), Federal Rules of Evidence. During trial, however, no attempt was made to introduce the controversial statement. A motion for mistrial was finally made after all the evidence was in. The district judge denied the motion on the basis of timeliness and because "I have more faith in juries than that." Lopez now argues that the judge's denial of the motion for mistrial was error. We disagree.

We may assume, without deciding the question, that the state of mind exception is inapplicable here.[1] Nevertheless, we conclude that the prosecutor's statement does not amount to reversible error. The first ground for denying the motion for a mistrial was that it was too late. We agree. The motion should have been made at the time the prosecutor made the statement. The district judge was then in the best position to take any necessary further curative action. In addition, if a mistrial had been warranted, ordering it at that juncture would have entailed but a relatively small waste of court and jury time. However, the statement of defense counsel made at the time—"I think they are in a mistrial area"—did not amount to a motion; at best it is a complaint about the conduct of the prosecutor. That is insufficient. Motions for mistrial must be specific as to their bases in order to be valid; accordingly, the failure to grant equivocal motions cannot be cited as error on appeal. *See, e. g., Cook v. United States,* 354 F.2d 529, 531–32 (9th Cir. 1965). If the rule were otherwise, a party who did not really desire to start afresh could make an offhand comment knowing no action would be taken and then, if unsuccessful in the trial, complain on appeal that the "motion" should have been granted.

---

1. *Compare Shepard v. United States,* 290 U.S. 96, 106, 54 S.Ct. 22, 78 L.Ed. 196 (1933) *with State v. Gause,* 107 Ariz. 491, 493–95, 489 P.2d 830, 832–34 (1971); *see also United States v. Pheaster,* 544 F.2d 353, 374–80 (9th Cir. 1976).

■ There are additional reasons why the district judge properly denied the mistrial motion. First, as pointed out above, the judge promptly admonished the jury that the opening statements are not evidence. Clearly, the jury did not accept this statement as evidence. The threat testimony was relevant only as to the existence of malice aforethought. The jury, by its verdict of voluntary manslaughter, demonstrated its disbelief that the killing was caused by any malice. The prosecutor's reference to the inadmissible evidence, therefore, could not have had a material effect on the jury's verdict. *See United States v. Valle-Valdez,* 554 F.2d 911, 913–915 (9th Cir. 1977).

Second, testimony to the same effect as the prosecutor's statement was admitted without objection during the cross-examination of the mother of the two boys. That evidence of a prior threat to kill was properly before the jury. Under these circumstances, the statement by the prosecutor was not reversible error. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Cook v. United States, supra,* 354 F.2d 529.

II

■ Lopez next alleges that it was reversible error for the trial judge to refuse to give proposed jury instructions on specific intent and voluntary intoxication. Lopez was charged with second degree murder and convicted of voluntary manslaughter, both of which require only general intent. "[T]he so-called 'exculpatory' rule, under which drunkenness may be taken into account to show that a particular state of mind . . . was not present" applies only to first degree murder, a specific intent crime. *Kane v. United States,* 399 F.2d 730, 736 (9th Cir. 1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969). Therefore neither proposed instruction was applicable.

III

In his closing argument, the prosecutor responded to defense claims that the shoot-ing was not intentional by commenting on Lopez's failure to explain to the arresting officers that the shooting was an accident. He stated:

The remark made by the defendant, apparently to his mother when she said why did you do it and he said: I didn't mean to, he started it, or something along those lines. If anything, perhaps this shows this was the beginning of some remorse. He killed his brother by pointing the gun at him when all the brother had done was start to walk at him. And then the gravity of this begins to sink in, although he didn't seem to be too remorseful the next day when Agent Freking was driving here to Tucson when he was laughing at jokes or whatever. So in any event, this is a likely or possible explanation for this. And in view of the fact he never told any of the other agents that it was an accident or that William was the cause of this, I submit to you it is pretty suspicious or it is unlikely this is the real explanation here. If it really was an accident, why didn't he protest his innocence, why didn't he protest and say: Wait a minute, this was an accident. Why didn't he stay home and say I had no reason to turn myself in. Those were his words to Ken Freking. He realized he had to go turn himself in. Would he have felt the same way if it was just an accident? I say no.

The Supreme Court has held "that the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *see also, United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (use of post-warnings silence for impeachment purposes held reversible error on general ground that silence lacked sufficient probative value).

In the present case, however, no objection was made to the prosecutor's reference to Lopez's silence and no curative instruction was requested regarding the improper

statement. Our threshold inquiry, therefore, is whether the prosecutor's conduct amounts to plain error which we may review even absent a timely objection. Rule 52(b), Fed.R.Crim.P.; *see, On Lee v. United States,* 343 U.S. 747, 750 n.3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *Kohatsu v. United States,* 351 F.2d 898, 901 n.4 (9th Cir. 1965).

■ It can be argued that errors with constitutional implications should be deemed per se plain error. *See United States v. Arnold,* 425 F.2d 204, 206 (10th Cir. 1970). We need not decide today the merits of this assertion. We do believe, however, that the error complained of here is "plain" and may thus be reviewed even absent a timely objection.

■ It is crucial to keep in mind, however, that the standard of "plain error" only goes to the issue of *reviewability* and *not* to the issue of whether a reversal is warranted. *See United States v. Wysong,* 528 F.2d 345, 348 (9th Cir. 1976); *United States v. Larson,* 507 F.2d 385, 387 (9th Cir. 1974); *United States v. Trejo,* 501 F.2d 138, 141 (9th Cir. 1974). Thus, an error unobjected to at trial may be so plain as to be reviewable under Rule 52(b), yet the error may be harmless and therefore not justify a reversal. For example, we have previously held that even though a prosecutor improperly introduced evidence of post-warnings silence, the error was harmless in light of substantial, independent, credible evidence of the defendant's guilt. *Egger v. United States,* 509 F.2d 745 (9th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 61 (1975).

■ Thus, having determined that the error in this case is plain and therefore reviewable, we must apply a discrete standard to determine the appropriateness of a reversal. Of course, in cases such as this involving constitutional errors, our duty is to reverse *unless* we are "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

In *Scarborough v. Arizona,* 531 F.2d 959 (9th Cir. 1976) we considered the harmfulness of a prosecutorial comment very similar to the one now before us. There we applied the example of *Anderson v. Nelson,* 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968), holding that the error is not harmless where the "comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported the acquittal." *Scarborough v. Arizona, supra,* 531 F.2d at 962, *quoting Anderson v. Nelson, supra,* 390 U.S. at 524, 88 S.Ct. 1133. We held that the comment in *Scarborough* met these criteria and was therefore not harmless beyond a reasonable doubt.

■ However, it is also clear that the prosecutorial comment must not be evaluated in the abstract. On the contrary, it must be judged in light of the evidence as a whole. *See United States v. Wycoff,* 545 F.2d 679, 682 (9th Cir. 1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977); *Egger v. United States, supra,* 509 F.2d at 747.

■ In the case before us, our review of the record as a whole persuades us that the prosecutor's concededly improper comment was harmless beyond a reasonable doubt. Here there was independent evidence already in the record and properly before the jury of Lopez's declination to explain the shooting. In fact, his post-arrest failure to explain that the shooting was an accident was first placed before the jury by Lopez's own counsel in her cross-examination of the FBI agent who transported Lopez to the county jail.[2] It is true that the prosecutor used the plural form "officers" in identify-

---

2. Q.  Did he tell you the gun went off accidentally?

A.  No, he didn't.

Q.  Or did you ask him if it went off on purpose?

A.  He said that he shot his brother by making a horizontal waving action across his chest. He made no statement as to whether it was an accident or not.

Q.  You didn't ask him?

A.  No, I didn't.

ing to whom Lopez was silent, while the evidence properly before the jury referred to only one officer. But an assertion that the jury must have concluded that the reference to Lopez's silence therefore referred to some discussion other than his confrontation with the FBI agent strains credulity. Under these circumstances, we believe that any error was harmless beyond a reasonable doubt.

## IV

During cross-examination, Lopez was asked if he had seen a pistol on William on the day of the shooting and he replied: "No, just a knife." On re-direct, his attorney asked Lopez if he remembered testifying about the knife. The question was translated for Lopez and his response indicated confusion about what he was being asked. The judge then interrupted and said that he remembered no prior reference to a knife. The court reporter mistakenly said there was nothing in the record about a knife. Lopez's counsel made no objection and began another line of questioning. There were no further statements concerning William's possession of a knife. Lopez now alleges that the reporter's error foreclosed him from bringing out evidence of self-defense.

■■■ There is no question that a mistake was made by the reporter. It is also true that re-direct is normally limited to the scope of cross-examination. However, Lopez's counsel was not foreclosed from pursuing the matter; she did not try. The judge can, in his discretion, allow a new line of questioning on re-direct. *Chapman v. United States,* 346 F.2d 383, 388 (9th Cir. 1965); McCormick, Evidence § 32 (2d ed. 1972). Because Lopez's counsel did not pursue the issue after the reporter erred, the district judge had no opportunity to allow the questions.

## V

■■ As to the final challenge regarding the sufficiency of the evidence, we conclude there was substantial evidence upon which the jury could have based its verdict. *Glas-*

*ser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *see United States v. Hood,* 493 F.2d 677 (9th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974).

AFFIRMED.

HUFSTEDLER, Circuit Judge, dissenting:

I cannot concur in the majority's opinion because I am unable to reconcile the majority's views with our prior decisions in *Scarborough v. Arizona* (9th Cir. 1976) 531 F.2d 959, and *Fowle v. United States* (9th Cir. 1969) 410 F.2d 48. I cannot agree with the majority's conclusions that the plain error in prosecutorial comment upon Lopez' silence can be characterized as harmless beyond a reasonable doubt. In the context of his case, the plain error could not be brushed aside under ordinary harmless error standards; *a fortiori,* the error cannot be harmless beyond a reasonable doubt. In addition, other errors during the course of the trial, although not of constitutional dimension, cumulatively denied Lopez a fair trial.

## I

The majority correctly recognizes that the prosecutorial comment upon Lopez' silence is "very similar to the one . . . before us" in *Scarborough,* where we held that the error was not harmless beyond a reasonable doubt. The majority does not successfully distinguish this case from *Scarborough.* Indeed, in *Scarborough,* the comment was less extensive than that in this case, and it was less emphasized by the prosecution in the argument before the jury.

The majority's efforts to distinguish *Scarborough* rest upon a misreading of the record. Defense counsel interrogated Agent Freking of the FBI about the statements that Lopez made to him during the course of the ride from Sells to Tucson. But the prosecutor's comments to the jury were not directed to Lopez' conversation with Freking, but to "the other agents"—a

statement that has to refer to Lopez' silence in the presence of the arresting officer and other Papago officers before his interview by Agent Freking.

The Government did not attempt to justify this comment about Lopez' silence on the ground that the error was harmless beyond a reasonable doubt. The Government correctly recognized that the contention, if made, could not properly be sustained.[1]

## II

The double errors made respectively by the district court and by the court reporter in stating that there was no testimony about the knife cannot be avoided. The majority implies that the errors were waived by the failure of Lopez' counsel to make some kind of objection. An objection based upon the combined failure of recollection of the trial judge and a court reporter has not yet been added to the lexicon of trial lawyers. The majority opinion also implies that failure to cure these errors was attributable to defense counsel because she did not continue the line of interrogation that was foreclosed by the trial court. No authority is or can be offered for this proposition. Trial counsel's efforts to renew a line of questioning which has been effectively foreclosed by a trial court is an open invitation to a judicial reprimand. Moreover, almost anything the defense counsel would have said under these circumstances would have dug the hole in which the client was placed even wider and deeper.

These errors were serious. One of the basic underpinnings for Lopez' claim of self-defense was that he had reason to believe that his brother was armed with a knife. As a result of these errors, Lopez' principal line of defense was seriously undermined, if not altogether destroyed. We cannot overlook the realities of the courtroom. The judge's intervention very surely could have persuaded the jury that there was no knife, and if any of the jurors

recalled testimony about the knife, the testimony was either untrue or the jurors' recollections were unreliable. The damaging character of these mistakes simply will not vanish.

## III

The majority opinion again attempts to eliminate prosecutorial error in his opening statement in referring to testimony which was inadmissible by discovering a waiver of the error. Defense counsel promptly and immediately objected to the prosecutor's statement on the ground that the evidence to which he had adverted was inadmissible hearsay. The court failed to rule on that objection, relying upon the prosecutor's statement that he had cases supporting the admissibility of the hearsay. The court simply cautioned the prosecutor "well, you show me the cases, but don't go into it until you can." Defense counsel did all that she could reasonably be expected to do to protect her record by indicating at that time that the error was in mistrial territory. Under the circumstances of the district court's refusal to rule upon the objection, a formal motion for a mistrial would have been an exercise in futility. Shortly after the district court finally ruled on the objection, defense counsel did make a formal motion for a mistrial. To require more of a defense attorney under the circumstances, is to reinstate legalistic rituals in the trial of cases which, I would have thought, we have long since abandoned.

All that the court did was to tell the jury to disregard as evidence all of the matters contained in the opening statements. Inadmissible hearsay to which reference was made was damaging. We do not know how much damage was done by the statement, and, if the error stood alone, it might possibly have been dismissed as harmless because actual prejudice would have been very difficult to establish.

1. The record does not supply any support for the majority's assumption that the jury disregarded the statements in question. We have no basis other than pure guess to decide that the jury brought in a verdict of voluntary manslaughter, rather than second degree murder because it disregarded the hearsay.

Fundamental error in the prosecutor's comment upon Lopez' silence, considered alone, requires reversal of this case. But, even if I had doubt about that proposition, that error combined with the other errors to which I have adverted, requires reversal. We must always be mindful about the climate in which a particular case is tried, because the atmosphere of any particular trial may strongly affect the impact of error. This trial was heavily ladened with emotion. The slaying of one brother by another is not only a tragedy in the Lopez family, it is a symbolic tragedy with lineage at least as old as Cain's slaying of Abel. The fact that fraticide occurred between drunken Indians did not detract from the emotional atmosphere of this case. Under such circumstances, we should be especially careful to scrutinize claims of error.

I would reverse and remand for a new trial.