**Larry A. STORSETH, # 623435,
Plaintiff-Appellant,**

v.

**John D. SPELLMAN, et al.,
Defendants-Appellees.**

No. 79–4682.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1981.

Decided Aug. 31, 1981.

David F. Gross, Graham & James, San Francisco, Cal., for plaintiff-appellant.

Katherine D. Mix, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees.

Before WRIGHT and ANDERSON, Circuit Judges, and BURNS, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

## I. INTRODUCTION

We are asked to determine (1) whether an inmate has a right to the assistance of an inmate writ writer of his choice to assure his right of access to the courts and (2) the extent of his First Amendment right to communicate with that writ writer.[1] Because inmate Storseth has enjoyed adequate access through other avenues, we hold that he does not have any right to inmate assist-

ance or to the aid of a writ writer of his choice. We hold also that the prohibition of his correspondence with his writ writer infringed on his First Amendment rights.

We affirm the district court's order precluding intervention by Storseth's inmate writ writer and offering to appoint counsel if Storseth agrees to abide by certain conditions. That part of the order barring interinstitutional correspondence between the two men is reversed.

## II. FACTS

While in the Washington State Penitentiary at Walla Walla in 1977, Riddell, an inmate writ writer, prepared and filed a civil rights action under 42 U.S.C. § 1983 on Storseth's behalf. It alleged mistreatment by the prison staff and failure to protect Storseth from other inmates. All papers filed up to July 31, 1979, were authored, signed, and filed by Riddell.

In March 1977, Riddell requested the court to appoint counsel for Storseth.

On October 27, 1977, Storseth was transferred to the State Corrections Center at Shelton at his request, and later to the State Reformatory at Monroe. The state prohibited correspondence between the two men after the transfer. In February 1978, Riddell, on Storseth's behalf, successfully sought a court order allowing the two men to correspond about Storseth's case subject to the state's inspection of their mail.

Riddell renewed the Motion for Appointment of Counsel on December 27, 1977, seeking appointment of Fred M. Schuchart of Spokane. The court appointed Mr. Schuchart on February 22, 1978.

On March 23, 1978, the court vacated its order allowing communication between Storseth and Riddell because it found that Mr. Schuchart's appointment rendered the communication unnecessary. It stated, however, that Riddell could communicate

---

* Of the District of Oregon.

1. Inmate writ writers are also known as jailhouse lawyers or inmate or prison legal assistants.

with Mr. Schuchart if necessary. Riddell and Storseth continued to correspond subject to the state's inspection until Riddell was transferred to the Clearwater facility, a remote honor camp on the Olympic Peninsula. At that time, the state again prohibited their correspondence.

Despite Mr. Schuchart's appointment, Riddell continued to author and file papers with the court on Storseth's behalf. In June 1978, the court granted Mr. Schuchart's motion to withdraw because of Riddell's interference and Storseth's request that Mr. Schuchart follow Riddell's directions in the case.

For the next 13 months, Riddell continued to file papers for Storseth, including another Motion for Appointment of Counsel. During that time, Riddell was transferred to the Clearwater facility which has no law library.

On July 16, 1979, the district court ordered that (1) the court clerk accept no further pleadings from Riddell, (2) counsel would not be appointed until Storseth personally made the request and agreed to abide by an attorney-client relationship without interference from third parties, and (3) the appeal from the state's ruling denying Riddell the right to correspond with Storseth was denied.

Storseth is back at the Corrections Center at Shelton. Riddell is at Clearwater.

Storseth appeals from the July 1979 order.[2]

## III. DISCUSSION

### A. Inmate Assistance

Storseth contends that the district court denied him meaningful access to the courts by conditioning appointment of counsel on his agreement to proceed without Riddell's interference and control, and by ruling that Riddell cannot file pleadings on his behalf.

He argues that he has a right to inmate assistance and to Riddell's services in particular because the state has not provided adequate alternatives of access.

### 1. Right to Inmate Assistance

■ It is well established that inmates have a constitutional right of access to the court. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). That right is premised on the Due Process Clause and assures inmates of the opportunity to challenge violations of their constitutional rights, *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974), and unlawful convictions. *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). This right adheres to civil rights as well as to habeas corpus proceedings. *Wolff, supra*, 418 U.S. at 579, 94 S.Ct. at 2986.

The question before us is whether Storseth has enjoyed and presently has access to the courts without Riddell's services. The crux of our inquiry is whether Storseth's access has been and is "meaningful". *Bounds, supra*, 430 U.S. at 823, 97 S.Ct. at 1495.

■ The state has the affirmative duty to provide constitutionally adequate access, *id.* at 829, 97 S.Ct. at 1498, and bears the burden of demonstrating the adequacy of the chosen method. *Buise v. Hudkins*, 584 F.2d 223, 228 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). Constitutionally acceptable means of access include provision of an adequate law library, *Bounds, supra*, 430 U.S. at 828, 830, 97 S.Ct. at 1498–1499, or a professional or quasi-professional legal services plan. *Id.*, at 831, 97 S.Ct. at 1499.

■ When no adequate alternative is available, an inmate may have the assistance of an inmate writ writer. *Johnson v.*

---

**2.** He has been well represented on this appeal by David F. Gross, Esq., of San Francisco, who was appointed by a motions panel of this court.

We express our appreciation to Mr. Gross and his firm, Graham & James.

*Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). The state, however, retains the authority to impose "reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and seeking of assistance in the preparation of applications for relief. . . ." *Id.* When meaningful alternatives are provided, the state may bar inmate writ writers altogether. *Id.*

Storseth argues that Riddell is his only meaningful avenue of access because (1) court appointed counsel is only a mere possibility and is not a state-provided alternative, and (2) the state has not proven the adequacy of the prison law libraries, the legal services program, or other inmate assistance. The state responds that Storseth has enjoyed meaningful access through all of these alternatives.

Appointed counsel, whether state or court provided, offers a meaningful, and certainly the best, avenue of access to an indigent inmate. An attorney is in a better position than the inmate or inmate writ writer to promote efficient and skillful handling of the inmate's case. *Bounds, supra,* 430 U.S. at 831, 97 S.Ct. at 1499. And he is able to avoid the disciplinary problems associated with writ writers. *Id.*

■ Although there is no constitutional right to appointed counsel for § 1983 claims, *Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir. 1980), this option is and has been available to Storseth since February 1978. By appointing Mr. Schuchart and later offering to appoint new counsel, the court has exercised its discretion and has converted this option from a mere possibility into a definite, available avenue of access. Storseth has not taken advantage of it because of his choice not to accede to the court's conditions.

■ Storseth's choice does not entitle him to inmate assistance or to Riddell's services. When an adequate method of access is provided and an inmate does not avail himself of it, he may not insist on an avenue of his choosing. *Ramos v. Lamm,* 639 F.2d 559, 583 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). Nor does he have any right to the services of a particular writ writer. *See Fair v. Givan,* 509 F.Supp. 1086, 1090 (N.D.Ind.1981). It is the state's option to choose among the avenues of access or combinations thereof to satisfy its constitutional obligation. *Bounds, supra,* 430 U.S. at 828, 97 S.Ct. at 1498.

■ This situation is analogous to a defendant's rejection of an offer of appointed counsel for appeal when appointment is discretionary. That defendant cannot then claim that the state infringed on his constitutional right of access by not providing him with another method of access, such as a law library. *Bell v. Hopper,* 511 F.Supp. 452, 453 (S.D.Ga.1981). His only option is to proceed pro se. *Id.* at 453.

We decline also Storseth's invitation to excise court-appointed counsel from the list of constitutionally acceptable means of access because it is not a state-provided alternative. He would have us ignore impermissibly the constitutional concern at the heart of our inquiry for the sake of adherence to form. *See Bounds, supra,* 430 U.S. at 823–25, 97 S.Ct. at 1495–1496.

That concern is whether the indigent defendant is assured an adequate, effective and meaningful opportunity to present his claims to the court. *See id.* at 822–23, 97 S.Ct. at 1495–1496. Appointed counsel, whether provided through the court's exercise of discretion or by the state, assures the inmate of that opportunity.

We conclude also that the court's condition precedent to appointment is reasonable. The court has the inherent power to determine who may practice law before it. An attorney representing an indigent inmate cannot be expected to nor should he direct and develop an inmate's case on the directives of an inmate writ writer who is not his client.

Even if we were to find that court-appointed counsel is not a constitutionally ad-

equate method of access, Storseth would have no right to inmate assistance or to Riddell's services in particular. The state has provided other methods of assistance through prison law libraries and Institutional Legal Services. It allows inmates at any one institution to assist one another. Taken alone or in combination, these options provided Storseth with meaningful access to the courts.

During the pendency of ,Storseth's lawsuit, the penitentiary and the Corrections Center have had law libraries, although the Shelton library burned down during an inmate riot in December 1980. Since 1972, those libraries, as well as the others in the state prison system, have contained legal materials satisfying the American Association of Law Libraries' recommended minimum collection for prison law libraries. These materials have been kept current.

Institutional Legal Services has been made available to indigent inmates throughout the state system since 1972 through the state's contracts with Evergreen Legal Services and Spokane County Legal Services. The contracts in effect during the pendency of Storseth's lawsuit provide that Institutional Legal Services provides civil legal assistance to inmates.

In addition to these options, the state allows inmates of any institution to assist one another on legal matters, as it allowed Riddell to assist Storseth when both were incarcerated at Walla Walla.

Access to inmate assistance does not mean, however, that Storseth has a right to inmate assistance in general or to Riddell's assistance in particular. Having provided adequate alternatives, the state is free to bar this assistance. *Johnson, supra.*

We find also that the practical difficulties in allowing inter-institutional assistance between inmates justify the state's and the district court's bar on Riddell's assistance to Storseth. The lack of any opportunity for personal consultation forecloses effective and skillful development of the inmate client's case. The time lag in developing a case through correspondence, not even considering additional time lag from restrictions on inter-institutional mail, would impede severely the progress of the case and would jeopardize the inmate's case by rendering him unable to meet court filing deadlines. And, as is the case here, the inmate writ writer's assistance would be of little value when he has no access to a law library.

### 2. Disciplining Writ Writers

■■■■■■■ The district court was free to curb Riddell's abuse of the court's process by enjoining his interference in the case. A trial judge has the broad discretion "to protect the administration of justice from 'abuses, oppression and injustice.'" *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981) (citations omitted).

> We agree with the Eighth Circuit that we do not believe that *Johnson v. Avery, supra*, and its progeny hold that a court is powerless to protect itself and its process from abuse by unscrupulous prison inmates who happen to be articulate and to have some knowledge of criminal law and procedure. If the courts possess power to discipline and disbar unethical lawyers in the civilian world, *certainly they ought to be able to exercise the same power with respect to unethical and irresponsible inmates of prisons who purport to provide legal representation to other inmates.*

*In re Green*, 586 F.2d 1247, 1251 (8th Cir. 1978), *cert. denied sub nom., Green v. Wyrick*, 440 U.S. 922, 99 S.Ct. 1249, 59 L.Ed.2d 475 (1979) (emphasis added). *See also Fair v. Givan, supra*, 509 F.Supp. at 1090.

In *Green*, the court upheld an inmate writ writer's contempt conviction for violating the court's order enjoining his writ writing activities. The court acted because it found that his activities were "completely irresponsible and that many of them were not undertaken in good faith." 586 F.2d at 1249. His abuses included his failure to

follow the court rules, his failure to represent faithfully the interests of his inmate "clients", and his misleading of inmates in the preparation of their own suits. *Id.* at 1250.

Riddell's writ writing activities in Storseth's case have much the same flavor. By interfering after the court appointed Mr. Schuchart and barred his right to correspond with Storseth, he ignored the court's implied directive to have Mr. Schuchart handle the case. His interference also helped to foreclose Storseth's better means of access by contributing significantly to Mr. Schuchart's withdrawal. The district court acted responsibly and in Storseth's best interests by enjoining Riddell's participation.

### 3. *Filing Papers with the Court*

Even if Storseth had been entitled to Riddell's assistance, he was not entitled to have Riddell file pleadings on his behalf. Inmate writ writers may *assist* other prisoners in the preparation of, *Johnson v. Avery, supra,* 393 U.S. at 490, 89 S.Ct. at 751, and filing of, *Guajardo v. Luna,* 432 F.2d 1324, 1325 (5th Cir. 1970) (per curiam), petitions for post-conviction relief. No authority authorizes them to engage in the practice of law by filing papers with the court as the inmate's legal representative.

### B. *First Amendment*

On February 8, 1978, the district court enjoined the state from prohibiting inter-institutional correspondence between Riddell and Storseth on matters pertaining to Storseth's lawsuit, but allowed the state to inspect it in their presence. After it appointed Mr. Schuchart to represent Storseth, the court quashed the order allowing the two inmates to correspond. In its July 1979 order, the court denied Storseth's appeal from the quashed order.

The state's prohibition on inter-institutional correspondence is pursuant to section 275–96–022(2) of the Washington Administrative Code (WAC). It prohibits such correspondence unless the superintendent of the institution gives prior approval.

Storseth argues that the complete prohibition on his correspondence with Riddell abridged his First Amendment right to correspond. He contends that the inspection of all incoming and outgoing mail required in WAC section 275–96–015(4) provides sufficient protection of whatever government interests may be involved. We agree.

Inmates retain those First Amendment rights not inconsistent with their status as prisoners or with penological objectives of the corrections system. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Challenges to restrictions on these rights must be analyzed in terms of legitimate policies and goals of the corrections agency. *Id.* Those interests are preservation of internal order and discipline, the maintenance of institutional security, and rehabilitation of prisoners. *Procunier v. Martinez,* 416 U.S. 396, 412, 94 S.Ct. 1800, 1810, 40 L.Ed.2d 224 (1974).

The limitation also must be no greater than is necessary to protect the particular governmental interest involved. *Id.* at 413, 94 S.Ct. at 1811. In addition, any decision to censor must be accompanied by minimum procedural safeguards. *Id.* at 417, 94 S.Ct. at 1814.

We agree with those courts that require specific evidence, *Rudolph v. Locke,* 594 F.2d 1076, 1077 (5th Cir. 1979) (per curiam), or at least an explanation of the purpose of the policy, *Buise, supra,* 584 F.2d at 230, to justify a restriction on First Amendment rights.

> Otherwise the necessary deference to the decisions of prison administrators [citation omitted] can only be a blind allegiance inconsistent with the notion that "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims." [Citation omitted]

*Id.*

There is no evidence what government interests a complete prohibition on Storseth's and Riddell's correspondence protects

or why complete censorship is necessary. The state's earlier agreement to allow correspondence subject to its inspection suggests that complete censorship is not the least necessary limitation.

We find that the complete prohibition on correspondence impermissibly restricts Storseth's First Amendment rights. Storseth and Riddell may correspond under the conditions imposed by WAC section 275–96–015(4). Their correspondence is not, however, entitled to the privileged status provided to an attorney and his client.

## IV. CONCLUSION

The district court order enjoining Riddell's filing of papers with the court in this case and conditioning appointment of counsel on Storseth's agreement to abide by a normal attorney-client relationship without third party interference is AFFIRMED. That part of the order denying Storseth's appeal from the complete prohibition on his inter-institutional correspondence with Riddell is REVERSED.