**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Paul WILSON, Defendant-Appellant.**

**No. 81–1117.**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 9, 1981.

Decided Feb. 1, 1982.

As Amended June 7, 1982.

John Paul Wilson, in pro per.

Ruth L. Cohen, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before WRIGHT and FLETCHER, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

## THE APPEAL

Wilson, appearing pro se, and in forma pauperis, appeals from a judgment of conviction and sentence for escape under 18 U.S.C. § 751(a).[1] We note jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## THE FACTS

On December 17, 1979, Wilson pleaded guilty to a misdemeanor counterfeit charge, 18 U.S.C. § 491(a). He received a one year sentence with six months suspended on the condition that he spend six months in a treatment-oriented institution, and was placed on three years probation.

After some delay due to another pending proceedings, Wilson was taken to the West Glenn Center, a federal halfway house. About two weeks after his arrival at the facility, Wilson signed out and failed to return. Deputy United States Marshals staked out Wilson's girl friend's apartment in Arizona. The marshals, in possession of both a description and a photograph of Wilson, observed him leave the apartment, stopped him, and explained who they were and who they were looking for. Although one marshal testified that he was certain at that point that the suspect was in fact Wilson, they neither informed Wilson that

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 751(a) states in relevant part: (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States ... pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . .

he was under arrest, nor read him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at that time. Instead, the marshals asked for some identification. Wilson produced two pieces of phony identification. When the marshals indicated that unless he could better identify himself, they would have to detain him until they could determine who he was, Wilson offered the explanation that he was in the area to visit "John."

The marshals accompanied Wilson on an unsuccessful search for "John." When Wilson became "fidgety," the marshals handcuffed him and took him to his girl friend's apartment. At the sight of Wilson in handcuffs, she began to cry, at which time the marshals advised Wilson that he was under arrest and read him the *Miranda* warnings.

At the arraignment, the Magistrate denied Wilson's request to proceed pro se and appointed counsel to represent him. Wilson then filed a notice of intent to appeal that denial. The Magistrate subsequently held a hearing on Wilson's ability to represent himself, and recommended that Wilson not be allowed to proceed pro se because he lacked the educational background to represent himself effectively.

Wilson responded with an objection to that recommendation, on which the District Court did not act before trial. On the day of trial, the court asked Wilson if he wished to represent himself. He indicated that, because he had received no access to a law library for preparation of a defense and because he was unfamiliar with trial procedure, he would not defend himself. Wilson agreed to an arrangement by which appointed counsel would examine witnesses and Wilson could ask additional questions himself or make suggestions to his counsel. Wilson's only participation at trial was at a sidebar conference in which he renewed his complaint that he had been denied access to a library to prepare his defense.

The District Court granted Wilson the opportunity to file a post-trial motion for judgment of acquittal, Fed.R.Crim.P. 29(c), asserting the defense that his sentence had expired due to accumulated "good time" credits at the time he left West Glenn Center.

After the guilty verdict, the court directed that Wilson have access to a law library and other materials necessary to prepare his Rule 29(c) motion. Wilson requested and was granted more time to file the motion and was given additional access to the library. He filed no motion, but claims prison officials seized his papers, which prevented him from filing.

DISCUSSION

I. DENIAL OF RIGHT TO PROCEED PRO SE

Wilson contends that the Sixth and Fifth Amendments together guarantee him a right to self-representation and access to a library prior to trial to prepare his defense.

■ Federal criminal defendants have both statutory and Sixth Amendment rights to waive counsel and represent themselves when they voluntarily and intelligently so elect. 28 U.S.C. § 1654; *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 562 (1975).

Wilson contends that, although he was ultimately given the right to participate in his trial to any extent he desired, denial until the day of trial of this right and of pretrial access to a law library effectively denied his Sixth Amendment right to proceed pro se. He argues that the Sixth Amendment right to self-representation recognized in *Faretta* implies a right of access to legal facilities and materials necessary to prepare legal arguments and documents.

We find a more narrow right to proceed pro se at trial implied from the Sixth Amendment by the Supreme Court in *Faretta*. The *Faretta* Court recognized that historically, with the brief exception of the Star Chamber, common law courts never have forced counsel upon unwilling defendants. Therefore, the "assistance of counsel" guarantees of the Sixth Amendment are not obligatory, but rather include a correlative right to reject counsel and to represent oneself.

■ In reaching this conclusion, the Court specifically recognized that a criminal defendant who exercises his right to reject counsel necessarily relinquishes many of the benefits associated with representation by counsel. Nowhere did the *Faretta* Court suggest that the Sixth Amendment right to self-representation implies further rights to materials, facilities, or investigative or educational resources that might aid self-representation. We decline to interpret the right to self-representation under the Sixth Amendment to include a right to conduct one's own research.

■ We do not condone the Magistrate's denial of Wilson's request to represent himself nor the delay until trial in reconsidering this denial. Properly, Wilson's original request should have been granted and counsel appointed to assist Wilson in preparation of his own defense. As it stands, the role of counsel appointed to Wilson's case was unclear, and Wilson argues this confusion denied him his right to self-representation.

We do not agree with him. Although the role of counsel perhaps should have been clarified to allow Wilson the primary role in conducting his own defense, we do not find this confusion denied the right to self-representation. A defendant may not effectively force the Government to provide a particular means of access to the courts by denying the means offered.

Wilson had access to counsel before trial but rejected the assistance. He was given the opportunity to and did participate during the trial. He was also allowed to file a post-trial motion for acquittal and given an extension of time and library access for preparation of the motion. Although the division of duties between Wilson and appointed counsel perhaps should have been more fully defined in accordance with the right to self-representation established in *Faretta*, we do not read *Faretta* to require retrial in this case.

Wilson argues further that the due process clause of the Fifth Amendment, which the Supreme Court has held requires some form of "meaningful access" to the courts, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct.

1491, 52 L.Ed.2d 72 (1977), when combined with the Sixth Amendment right to self-representation, requires that he be afforded library access to prepare a "meaningful" defense.

■ Several circuits have considered and rejected this argument, and we agree with their analysis. *Spates v. Manson*, 644 F.2d 80 (2d Cir. 1981); *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978); *United States v. West*, 557 F.2d 151 (8th Cir. 1977). The defendant's right to self-representation does not include a right of access to a law library when the state has provided an alternative.

The Supreme Court, in requiring meaningful access to the courts, has been careful to note that providing access to law libraries is but one of a number of constitutionally permissible means of achieving that objective. *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. at 1499. This circuit has recently reiterated the rule. *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir. 1981). Availability of legal assistance is a constitutionally permissible means of access. *Id.* When adequate access is provided, an inmate may not reject the method provided and insist on an avenue of his or her choosing. *Id.* at 1353.

Wilson was provided with appointed counsel and chose to reject his services entirely until the day of trial. While it is not clear whether Wilson ever specifically was offered the research services of counsel, the availability of appointed counsel to assist in preparing a defense provided an adequate means of meaningful access to the courts. Wilson cannot obtain access to a law library by rejecting the assistance of counsel offered by the court. The choice of methods of meaningful access remains with the Government. Providing a law library to conduct his own research in this case was not mandated by the Fifth or Sixth Amendments.

As in *United States v. Chatman*, 584 F.2d 1358, where library facilities are not available and where the defendant has rejected appointed counsel under a claimed right to self-representation, the conviction should stand.

## II. THE ADMISSIBILITY OF THE FALSE IDENTIFICATION AND STATEMENTS MADE TO THE U. S. MARSHALS PRIOR TO THE ARREST

Wilson next contends that he was in custody but had not been given the *Miranda* warnings at the time he gave the marshals two pieces of false identification and a false story explaining his presence at the apartment complex where he was arrested. He argues that it was, therefore, reversible error for the District Court to admit this evidence.

The record indicates that this objection was not properly preserved for appeal. *United States v. O'Brien*, 601 F.2d 1067 (9th Cir. 1979); *Vitello v. United States*, 425 F.2d 416, 423 (9th Cir. 1970), *cert. denied*, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970); Fed.R.Evid. 103(a)(1). When the first marshal testified, neither Wilson nor his attorney objected to the testimony concerning Wilson's statements at the time of his arrest. Wilson's attorney did object to the testimony about the false pieces of identification on the grounds that it was "irrelevant and immaterial," but was overruled. When the Government offered photocopies of the false I.D. into evidence, Wilson's attorney stated that he had no objection.

During the Government's examination of the second marshal, Wilson's attorney objected to any testimony regarding the false identification on the grounds that it was irrelevant and immaterial, and it was a violation of the defendant's rights. The objection was overruled, but the Government did not pursue the line of questioning. On cross-examination, the second marshal testified that he had both a physical description and a photograph of Wilson when he first approached him and that he was "sure" it was Wilson at that time, before Wilson was asked for any identification or had made any statements. Furthermore, the marshal responded in the negative to the defense counsel's question of whether the defendant was advised of his rights at the time he was asked to identify himself. Neither Wilson nor his counsel, however,

used this testimony to renew the objection to the disputed evidence or to ask that it be stricken as violative of the defendant's Fifth Amendment rights.

■■ It appears that neither Wilson nor his counsel complied with the requirement of Fed.R.Crim.P. 51 that a party make "known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor . . . ." Rules of Evidence require that the grounds for an objection be specifically stated, and if no objection is made at the time the evidence is offered and received, its admissibility generally cannot be challenged on appeal. *Vitello v. United States*, 425 F.2d at 423; Fed.R.Evid. 103(a)(1). Similarly, if a general objection is overruled when a specific objection should have been made, the party is precluded from asserting the proper objection on appeal. *United States v. O'Brien*, 601 F.2d 1067.

■ Despite the defendant's failure to preserve his objection properly for appeal, however, we will review his claim of error arising from the District Court's admission of the evidence in question if the unobjected-to error rises to the level of "plain error" as contemplated by Fed.R.Crim.P. 52(b): "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

■ A "custodial interrogation" occurs, for purposes of triggering the requirement of a *Miranda* warning, when law enforcement officers initiate questioning after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. at 477, 86 S.Ct. at 1629. Wilson contends that he was effectively "in custody" when he was approached by the U. S. Marshals and asked to identify himself, and that the pieces of I.D. and the statements regarding his identity were, therefore, obtained in violation of his *Miranda* rights. The Government, on the other hand, claims that the evidence was obtained during an

investigatory stop which was initially non-custodial in nature. This court has held that, in the context of an investigatory stop, a mere request for written identification of a person does not necessitate a *Miranda* warning, even where the person is a suspect, so long as the questioning does not occur in a police-dominated or a compelling atmosphere. *United States v. Hickman*, 523 F.2d 323, 327 (9th Cir. 1975).

■ Whether the evidence in question was admissible at trial depends on the District Court's determination of when the defendant was significantly deprived of his freedom of action—that is, of whether the marshals' initial questioning of Wilson about his identity constituted a "custodial interrogation" within the meaning of *Miranda*. While the question of whether the request for identification amounted to a "custodial interrogation" is a close one, we conclude that it was not plain error for the District Court to admit the two pieces of false identification. We, therefore, decline to review Wilson's claim on appeal that the admission of the I.D. violated his Fifth Amendment rights.

■ After Wilson produced the false pieces of identification, however, the marshals advised him that unless he could better identify himself, they would have to detain him. In response, Wilson told the marshals the story of his intended visit to "John." On these facts, it appears that Wilson's freedom was significantly restricted when he made the statements about "John" and that *Miranda* warnings should have been given at that time. In light of these circumstances, we conclude that the admission of those statements clearly violates Wilson's Fifth Amendment rights and thus rises to the level of "plain error" as contemplated by Rule 52(b).

■ The standard of "plain error," however, goes only to the issue of reviewability and not to the issue of whether a reversal is warranted. Thus, an error unobjected to at trial may be so plain as to warrant review under Rule 52(b); yet the error may be harmless and, therefore, not justify a reversal. *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir. 1978). In cases involving errors of constitutional dimension, we should reverse unless we are "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Lopez*, 575 F.2d at 685. In applying the *Chapman* standard, we must judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from the error. *United States v. Larsen*, 596 F.2d 347, 348 (9th Cir. 1979); *United States v. Lopez*, 575 F.2d at 685.

■ In this case, while the statements in question appear to have been obtained in violation of *Miranda*, we conclude that their introduction at trial does not require reversal. Although the Government never made clear its purpose in eliciting the testimony concerning the false I.D. and false statements, the evidence was relevant to prove that Wilson possessed the state of mind required for conviction under the escape statute as defined by this Circuit—that his failure to remain within the limits of, or timely return to, confinement was "willful" or "blameworthy." *United States v. Jones*, 569 F.2d 499 (9th Cir.), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 407 (1978). The fact that Wilson had willfully failed to return to the West Glenn Center was clearly established by the fact that he provided false identification, which implies that he was attempting to avoid detection by the authorities. Additionally, the Government presented evidence establishing that Wilson had signed out of the West Glenn Center and had failed to return by the designated time. In view of the substantial, independent, and credible evidence of defendant's guilt presented at trial, our review of the record as a whole convinces us that the error in admitting the defendant's statements and the fruitless search for John was harmless beyond a reasonable doubt.

## III. OTHER ISSUES

Wilson made several additional claims, all of which are without merit. We dispose of them briefly.

## A. Alleged Seizure of Legal Papers

■ Wilson first claims that jail officials seized his legal papers before trial. He did not, however, make this claim to the District Court; nor does he indicate to this court what kind of legal papers were allegedly involved or in what way he may have been prejudiced. Thus, we conclude that this issue is not properly before us and we do not reach its merits.

The defendant additionally claims, also for the first time on appeal, that he was prevented from filing a motion for a post-trial judgment of acquittal under Fed.R. Crim.P. 29(c) because prison officials seized his legal papers after trial. He does not, however, suggest what grounds he intended to assert in the motion, nor does he indicate that he informed the court of the seizure when he was sentenced or at any other time. Furthermore, Wilson does not point to any grounds which he might have pressed for post-conviction relief which he is unable to present with equal effectiveness here. Thus, on the record before us, it does not appear that Wilson was in any way prejudiced by the alleged seizure.

## B. Hearsay Claims

Wilson challenges the admission of three documents. First, he argues that Exhibit 5, the photocopy of the two false pieces of identification, was inadmissible because it was not made in the ordinary course of business, but was instead made in anticipation of trial. Second, he claims that the Government's Exhibit 1, a certified copy of a Judgment and Commitment Order relating to the criminal conviction for which Wilson was incarcerated at the time of his escape, was inadmissible hearsay because it relates to a misdemeanor conviction which

was not "punishable by death or imprisonment in excess of one year" as is required to render a judgment of a previous conviction admissible under Fed.R.Evid. 803(22). At trial, however, Wilson's attorney failed to object to the admissions of Exhibit 5, and objected only to the marshal's return on the back of Exhibit 1 specifically stating that he had no objection to the admission of the judgment and commitment order itself. Thus, the objections which Wilson raises here appear to have been waived.[2]

■ The record indicates that Wilson's attorney did, however, properly raise a hearsay objection to the Government's Exhibit 2, which is a receipt for a United States prisoner (Wilson) from the marshal. This exhibit had been signed by the director of the West Glenn Center, and was identified by her at trial. Thus, the document constitutes a public record or report admissible under Fed.R.Evid. 803(8), which was adequately authenticated by the testimony of the director at trial, Fed.R.Evid. 901(a), (b)(1) and (7).

## C. Speedy Trial Claim

Wilson was captured by the marshals on March 28, 1980, but was not indicted for escape until May 28, 1980. At the time of his recapture, Wilson had approximately two months remaining on his sentence. He now claims that the two month delay between his arrest for escape and the indictment violated the provisions of the Speedy Trial Act establishing a thirty-day limit for filing an indictment after an arrest, 18 U.S.C. § 3161.[3]

■ The Government contends that the statute does not apply because Wilson was not "arrested or served with a summons in

---

2. We note that, in addition, Exhibit 5 is admissible under Fed.R.Evid. 1003, which makes a duplicate admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the duplicate in lieu of the original. Further, Exhibit 1, certified on both sides, is thus adequately authenticated under Fed.R.Evid. 902(4) and is admissible in its entirety under the pub-

lic records exception to the hearsay rule, Fed.R. Evid. 803(8).

3. 18 U.S.C. § 3161 states in relevant part:
   (b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

connection with" the charge of escape as is required to trigger the thirty-day limit of § 3161(b), but was instead merely returned to custody to complete his previous sentence. We agree with the Government's interpretation that § 3161 does not apply where escapees are recaptured and later indicted for the escape.[4]

### D. Sufficiency of the Evidence

Finally, Wilson claims that the evidence was insufficient to support his conviction in two respects. First, he claims that the Government failed to prove that he was confined in an institution designated by the Attorney General as required by § 751(a).[5] This court held in *United States v. Rosas-Garduno*, 427 F.2d 352, 353 (9th Cir. 1970), that the Government need not prove that the confinement was by the direction of the Attorney General.

■■■ Second, Wilson contends that the Government failed to prove that the escape was from a confinement based upon the conviction charged, which is a necessary element of the offense. *Bayless v. United States*, 381 F.2d 67, 73 (9th Cir. 1967). The appropriate standard of review, well-established in this Circuit, is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir. 1979).

■■■ Here, the Government introduced a certified copy of the judgment and commitment for Wilson (Exhibit 1) which contains

the District Court's recommendation that West Glenn be the place of confinement. The exhibit has an executed marshal's return on the back which states that the defendant was delivered to West Glenn Center, the institution designated by the Attorney General, with a certified copy of the judgment and commitment. We conclude that the judgment and commitment with the executed marshal's return on the back was sufficient to indicate that the confinement was by virtue of the conviction. *United States v. Rosas-Garduno*, 427 F.2d at 353.

## IV. CONCLUSION

The judgment of conviction and sentence entered on November 24, 1980 by the District Court is affirmed.

AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

Because the majority misconstrues Wilson's self-representation claim and erroneously concludes that he was not denied his right to self-representation, I must dissent.

Wilson wanted to represent himself; he said so unequivocally at his arraignment. Instead, after a hearing, the magistrate appointed counsel to represent Wilson because "the defendant lacks sufficient background educationally or otherwise to adequately represent himself..." Wilson protested but received no response.[1] On the day of his trial, with potential jurors already in the

---

4. The few cases which have dealt with the issue agree. *See United States v. Kripplebauer*, 463 F.Supp. 291 (E.D.Pa.1978); *United States v. Grant*, 433 F.Supp. 1113 (S.D.N.Y. 1977).

5. *See* note 1 *supra.*

1. Wilson attempted to appeal the magistrate's denial of his request to represent himself. He filed a "Notice of Intent to Appeal Denial of Motion to Proceed in Propria Persona" with the District Court. The court received this document long before Wilson's trial. The district judge's clerk, however, proposed in a memorandum to the judge that Wilson's request be "placed in the file and ignored until the time of trial." The judge approved this plan by noting "OK" in the margin of the clerk's memoran-

dum. Subsequently, the clerk sent a copy of his memorandum to Wilson's appointed counsel with a note that explained, "see attached so that you will know what the plan is." As a result of this scheme, appellant's request to represent himself was not reviewed until the day of this trial. Thereby, the court and defendant's counsel willfully and knowingly deprived the defendant of an opportunity to prepare his own defense in advance of trial. The court and counsel's extraordinary and inappropriate conduct, alone, is reason enough for reversal. It evinces a callous disregard for appellant's rights and constitutes an abuse of discretion on the part of the court. *See* Fed.R. Crim.P. 12(e) ("A motion made before trial shall be determined before trial....").

courtroom, the judge offered Wilson the choice of conducting his own trial or proceeding with counsel, but with an opportunity to question witnesses himself. Wilson chose to proceed with counsel because he had not had an opportunity to prepare his own defense.

The sixth amendment and 28 U.S.C. § 1654 (1976) guarantee a defendant the right to represent himself in federal court. *Faretta v. California,* 422 U.S. 806, 813, 818, 95 S.Ct. 2525, 2530, 2532, 45 L.Ed.2d 562 (1975); *Bittaker v. Enomoto,* 587 F.2d 400, 402 (9th Cir. 1978). This right cannot be denied because a defendant lacks expertise or professional capabilities, *United States v. Trapnell,* 512 F.2d 10, 11 (9th Cir. 1975), nor must a defendant show prejudice in order to prevail on a claim that his self-representation rights have been denied, *Bittaker,* 587 F.2d at 402; *United States v. Price,* 474 F.2d 1223, 1227 (9th Cir. 1973).[2]

The majority agrees due process requires that a defendant representing himself have meaningful access to the court. Maj. Op. at 1245. However, a defendant may not insist on a particular means of access so long as the state provides a meaningful one. *Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Storseth v. Spellman,* 654 F.2d 1349, 1353 (9th Cir. 1981); *United States v. Grimes,* 641 F.2d 96, 98 (3rd Cir. 1981).

Meaningful access for the pro se litigant involves, at a minimum, some time to prepare and some means of getting prepared for trial. Wilson had absolutely no time to prepare. Appointed counsel's preparation

to conduct the trial is not the equivalent of Wilson getting *himself* prepared. Had Wilson known he could represent himself, he could have asked the appointed lawyer to get books for him, gather information, or give advice on trial procedure in aid of Wilson's defense of himself. Wilson could have prepared *himself* with this aid. Or he could have scorned the lawyer and taken whatever other means were available to him to get ready. The court even could have withdrawn the appointment of advisory counsel, provided Wilson was given reasonable time and some reasonable way of preparing himself for trial—for example, through aid of a jail-house lawyer, or through access to books from the library. Meaningful access can be by any of several routes. None was afforded here.

The majority, apparently in an effort to find meaningful access, obfuscates the facts and blurs the distinction between counsel appointed to represent a defendant and counsel appointed to advise a defendant representing himself.[3]

Because Wilson was given no time to prepare and was not offered advisory counsel or any other means of preparing his own defense, despite repeated and unequivocal requests to represent himself, I would reverse Wilson's conviction and remand the case to the district court.

**2.** A defendant, of course, waives his right to counsel if he chooses to represent himself, and, conversely, once he has chosen to represent himself, a return to representation by counsel must be accompanied by a voluntary waiver of the defendant's self-representation rights. "The very essence of a voluntary waiver is that it be the product of a free and meaningful choice." *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir. 1981). Wilson's decision to accept appointed counsel did not involve such a meaningful choice. He was never allowed to think that he might be able to represent himself until the day of his trial. At that point he was given a choice between representing himself *unprepared* or proceeding with counsel. The court's offer to allow Wilson to have counsel but to question witnesses and comment does not cure the defect in the choice he faced. Thus, the majority does not, and could not, argue that

Wilson voluntarily waived his right to represent himself.

**3.** The majority claims confusion where there is none. *See* Maj. Op. at 1245. The majority states that "it is not clear whether Wilson ever specifically was offered the research services of counsel." Maj.Op. at 1245. There is no hint in the record *anywhere* that he was given that choice, nor would such an offer make sense because the magistrate had denied Wilson the right to represent himself. Only on the day of trial did the court reverse the magistrate. At another point the majority states the defendant "had access to counsel before trial but *rejected the assistance.*" Maj. Op. at 1245 (emphasis added). Wilson rejected *representation.* Nowhere in the record is there any evidence he was offered *assistance.*